J. HULL BROWNING ET AL., PLAINTIFFS IN ERROR, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BERGEN ET AL., DEFENDANTS IN ERROR.

Argued March 11, 1910—Decided June 20, 1910.

1. The board of chosen freeholders, under the provisions of the act of March 28th, 1892 (*Pamph. L., p.* 308), invited bids for the construction of a bridge according to a certain proposal, plans and specifications that were advertised and duly exhibited to prospective bidders who were, by the proposal, required to bid "a lump sum for the whole work complete." The proposal reserved to the board the right to require more or less work to be done under the contract and therefore called upon each bidder to state the unit price he would charge in case of the increase or decrease in the quantity of material required. *Held,* that the competitive feature of the proposal was the bidding that was invited for the entire work as specified and that the contract must be awarded upon the basis of such bidding and not upon estimates compiled by the engineer of the board by applying the unit prices to a work that differed radically from that specified in the proposal.
2. Where there is no common standard there is no competition, and the same is true where the common standard to which a competition is invited is abandoned in declaring its result.

---

On error to the Supreme Court, whose opinion is reported in 49 *Vroom* 289.

For the plaintiffs in error, *Griggs & Harding.*

For the defendants in error, the Board of Chosen Free-holders and F. R. Long Company, *William B. Gourley* and *Luther A. Campbell.*

The opinion of the court was delivered by

GARRISON, J. The proceedings of the board of chosen free-holders of the county of Bergen that were challenged by the prosecutor and sustained by the Supreme Court culminated in the awarding of a contract to F. R. Long Company to set aside which the writ of *certiorari* was prosecuted. The ma-terial facts are stated in the opinion of the Supreme Court. 49 *Vroom* 289.

The single question that will be decided is whether or not in the awarding of the contract to the F. R. Long Company, who was not the lowest bidder for the work specified in the proposal, there was a substantial compliance on the part of the board of chosen freeholders with the provisions of the act of March 28th, 1892 (*Pamph. L., p.* 308), under which statute the proceedings were had. The pertinent provisions of that statute are as follows:

"And be it enacted, that the work of the **construction or** reconstruction of such bridge, so as aforesaid provided for, shall be done by contract or contracts to be awarded therefor to the lowest bidder, upon bids or proposals to be invited by advertisements published in not less than two newspapers circulating in such county, for not less than two weeks pre-vious to the time fixed for the receipt of such bids; the plans and specifications for such bridge shall be on exhibition at the office of such board for a like period of time; any bid or part of a bid may be rejected if deemed for the best interest of the county to do so; security by bond or like obligation shall be required for the faithful performance of such contracts in a sum of not less than fifty per centum of the same, and in no instance shall less than two sufficient sureties be required, who shall be freeholders owning lands and real estate in such county, and affidavit thereof shall be attached to such bonds;

said board may impose such other requirements by exaction from the bidders for the work of a deposit of money or a certified check, or otherwise, to secure faithful performance of such contracts and proper protection of the interests of the county in matters relating thereto as may be deemed prudent."

These provisions were complied with as far as the advertisement of the proposal and the exhibition of plans and specifications were concerned. The proposal stated at the outset, "The work to be done for which bids will be received is as follows: To construct a bridge in accordance with the accompanying plans and specifications." Here follows a detailed proposal and specification covering eighteen closely-printed pages and concluding with the declaration, "Bidders will state lump sum for the whole work complete." At the end of the proposal, and under the head of "payments," the following statement is made:

"Bidders will state their prices for constructing the entire bridge complete in accordance with the plans on file, including the embankment at each end of the bridge.

"The board of freeholders reserves the right to extend or diminish the amount of work to be done under this contract; and, therefore, no bid will be considered regular unless the bidder states a unit price as follows for any increase or decrease in the quantities of material required:

"Their price per cubic yard for concrete in substructure.

"Their price per pile in place.

"Their price for structural steel per ton.

"Their price per square yard for wooden block pavement, block pavement including concrete foundation.

"Their price per square foot for concrete sidewalk, including foundation.

"Their price per lineal foot for railing, including support.

"Their price per cubic yard for embankment.

"Their price per cubic yard for earth excavation."

From this resumé of the pertinent parts of the proposal for bids two things are apparent—*first,* that the only bids invited were for the entire work as shown by the plans and specifications, and *second,* that the unit prices called for from each

bidder had sole relation to the work that the successful bidder might be required to do or to leave undone under his contract in accordance with the reserved right of the board to modify the amount of work to be so done.

While there is nothing in the statute that expressly authorizes a call for these unit prices, the demand for them, as a protective measure to the public in the event of modifications of the work to be done by the contractor, is entirely unobjectionable. Clearly this was the only purpose of such demand as expressed in the present proposal. The competitive feature of the proposal was the bids (called in the proposal "lump sum" bids) which each bidder was required to make for the completion of the entire work according to the plans and specifications exhibited to all alike; the call for unit prices on the other hand was a protective measure in view of possible demands that might be made upon the successful bidder when he should have become the contractor, for modifications in the details of the contract, presumably not yet determined upon by the board and certainly not disclosed to the bidders or to all of them alike.

There was nothing therefore in the proposal to suggest that such unit prices were to constitute the competitive feature of the award. Indeed, it is not perceived how anything remotely resembling substantial or intelligent competition for a public work could take place where the bidders did not know what work they were to do and where the proposer himself did not know what work was to be done. Where no common standard is set up no competition is proposed. No such preposterous proposal was, however, made in the present case. The proposal was to award the contract upon competitive bidding—the contract when awarded to be safeguarded in the event of possible modification by holding the successful bidder to his statement of unit prices.

What the board in the present case did was to abandon the competitive feature set forth in their proposal and, instead of awarding the contract to the bidder whose bid of the sort called for was the lowest, to base their award upon estimates compiled by their own engineer from the unit prices furnished

by the various bidders in response to a totally different demand, and then to apply the bids thus fabricated to a changed scheme of construction that differed radically from that exhibited to the bidders in the plans and specifications to which the competitive bidding, both by the statute and by the proposal itself, had been expressly addressed. As an illustration of the radical difference between the work for which bids were invited, and that to which the supposititious competition was referred, it may be stated that, with respect to one part of the work alone, where the advertised plan called for sixteen spans, the substituted plan called for but two spans; and where but four thousand cubic yards of embankment were called for in the advertised plan the substituted plan called for considerably more than forty thousand.

It seems to us to be too clear for further elaboration that an award thus made was neither in law nor in fact the result of competitive bidding. It is universally recognized that where there is no common standard there is no competition, and the same must be true where the common standard to which a competition is invited is abandoned in declaring its result. Concluding, as we do, that the contract between the defendants in error, that was attacked by the prosecutor, was unlawfully awarded, and must be for nothing holden, the other grounds of attack made upon the proceeding cease to be of legal concern to these litigants. The judgment of the Supreme Court is reversed and the resolution of the board of chosen freeholders of the county of Bergen awarding the contract in question to F. R. Long Company is set aside.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ.    13.