STEVE WASZEN AND STEVE WASZEN, Jr., CO-PARTNERS, TRADING AS STEVE WASZEN & SON, AND ALEX FISCHER, PROSECUTORS, v. CITY OF ATLANTIC CITY AND LAWRENCE B. HAINES, RESPONDENTS.

Submitted January term, 1948—Decided August 30, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutors, *Isaac C. Ginsburg.*

For the City of Atlantic City, *Leon Leonard.* (*Chaim H. Sandler,* of counsel).

For the respondent Haines, *Stephen A. Damico.*

The opinion of the court was delivered by

COLIE, J. This writ of *certiorari* was allowed to review a resolution of the Board of Commissioners of Atlantic City awarding to Lawrence B. Haines the garbage disposal contract in Atlantic City for a period of three years. The prosecutors are Steve Waszen and Steve Waszen, Jr., unsuccessful bidders for the contract which was awarded to respondent Haines, and Alex Fischer said to be a taxpayer in Atlantic City.

The municipality in accordance with the requirement of *R. S.* 40:50-1 advertised for bids on a one year contract for the collection and disposal of garbage with the city. Three bids were received, one from Waszen for $10,400, another from Haines for $15,990, and a third from Riddle for $19,600. All three bids were rejected. Thereafter the city advertised for a three year contract. Specifications were adopted "for the doing of the work in a sanitary and inoffensive manner." *R. S.* 40:66-4. For the three year contract Waszen tendered a bid of $31,200 and Haines a bid of $45,600. The commission then held a hearing at which witnesses on behalf of both bidders and the city were examined and subsequently the resolution awarding the contract to Haines as the lowest responsible bidder was passed. The prosecutors attacked the award to Haines on the ground that the specifications were illegal; that Haines was unlawfully preferred and, finally, that he did not comply with the specifications. One of the reasons filed in this *certiorari* proceeding was that prosecutor Waszen was the lowest responsible bidder. This point is not briefed and therefore is considered to be abandoned.

The main attack centers about the illegality of the specifications. In drawing specifications to conform with the statutory requirement of a "sanitary and inoffensive manner" the municipality is to be guided by the standard of reasonableness. What is a reasonable specification will depend upon the particular local situation. Atlantic City has some reputation as a health resort and in the past it has had trouble in devising a satisfactory system of garbage collection. It has apparently worked out to its satisfaction the present "farmer-collector" system. That this decision has not been arrived at without considerable thought is evidenced by the fact that Atlantic City and its garbage disposal problems have been the subject of litigation in the courts of New Jersey as far back as 1905, *Townsend* v. *Atlantic City, &c., Co.*, 72 *N. J. L.* 474, and as recently as *Sandfort* v. *Atlantic City*, 134 *Id.* 311. The latter case, decided in 1946, gives a graphic description of the unwholesome conditions that prevailed when the garbage collection system broke down. The court in that opinion described it as follows: "In many parts of the city the garbage was uncollected, householders burned it in shallow plots of ground, some took it to the dump; it was dumped in the thoroughfares and basins around the town. The city was overrun with maggots, vermin and rats, due to the non-collection of garbage. Large sums were expended in an effort to exterminate the rats. The office of the Board of Health received 4,698 complaints respecting the manner in which the garbage was left to ferment upon the sidewalks." With this prior history in the minds of the commissioners, the specifications prepared for the three year contract were more stringent than theretofore.

The courts have established certain requirements as to specifications. They must be as definite, precise and full as practicable in view of the character of the work, the quality and quantity and the materials to be furnished. Furthermore, specifications must furnish the same information so that prospective bids may be made intelligently. *Schwitzer* v. *Board of Education*, 79 *N. J. L.* 342; *Phifer* v. *Bayonne*, 105 *Id.* 524. A slight irregularity in specifications for proposed public work will not, of necessity, void the award of

the contract. The alleged irregularity must be of a substantial nature such as will operate to affect fair and competitive bidding. *Phifer* v. *Bayonne, supra.* In testing the legality of a specification, the court will not, in the absence of a showing of bad faith, substitute its judgment on such an administrative matter concerning the internal affairs of the municipality for the reason that the decision as to what specification shall be drawn rests within the discretion of the governing body of the municipality. *Kingston Bituminous Products Co.* v. *Long Branch,* 124 *Id.* 472.

In light of these general rules, an examination of the particular specifications attacked is in order. Specification 30 provides as follows:

"30. The garbage shall, during the existence of this .contract, be disposed of in the following manner:

"Whereas a large number of farmers in Atlantic County adjacent to Atlantic City have been encouraged to raise swine in order to increase the national food supply; and whereas the major feed supply for such swine has in the past come from Atlantic City garbage, and as this garbage is an important source of feed for such swine; and whereas it is in the best interest of the national economy that such sources of feed be maintained for the purpose of increasing the food supply and to insure the fair distribution of Atlantic City garbage for the purpose aforesaid, the contractor herein shall submit with his bid a list of not less than 25 farmers, which list shall be signed by said farmers and shall set out under oath that the farmer was on February 1st, 1947, operating for himself in Atlantic County a farm of at least ten acres and that he had suitable pens and accommodations for the raising of swine, which accommodations were approved by the State Board of Health, and that on that date he had not. less than 50 and not more than 1,000 swine which he intends to raise and process for market;. and further, that said farmer has had experience in the collection of garbage in the City of Atlantic City within a period of the past five years and also has a good record in the performance of said collection.

"The said list so signed and verified shall be enclosed in the envelope containing the bid.

"The Contractor agrees to distribute the garbage collected hereunder in a manner satisfactory to the City and as provided in these specifications, exclusively to the farmers listed as aforesaid, and to such others as the Mayor shall from time to time in writing approve, in such proportions as their needs require, and the supply of garbage permits. The Contractor shall not under penalty of forfeiture of his contract dispose of any of the Atlantic City garbage, the subject of this contract, outside the limits of Atlantic County, or in any other manner than provided in this section nor to any other person than those eligible hereunder; and the entrails and waste from fish markets and fish filleting plants shall be rendered or otherwise converted by the Contractor within the limits of Atlantic County and in a manner as specified in the bid."

The attack on this specification is that it favors the farmers of Atlantic County over farmers elsewhere in the state; that because of its wording, the selection of the contractor lies in the control of the farmers, rather than with the City Commission. This attack is based on the fact that there are but 37 qualified farmers in Atlantic County and that since those 37 are, in the main, now committed to Haines, they are not free to sign up for another contractor. We do not find any evidence to support this charge. It is further said that Specifications 21 and 30 when read together are indefinite because of the fact that Specification 21 provides that "the Contractor, upon the collection of garbage, becomes the owner thereof * * *," whereas Specification 30 provides that "the Contractor agrees to distribute the garbage collected hereunder in a manner satisfactory to the city and as provided in these Specifications, exclusively to the farmers listed as aforesaid, and to such others as the Mayor shall from time to time in writing approve, in such proportions as their needs require, and the supply of garbage permits." We do not read the above quotation from Specification 30 as negativing the provision in Specification 21 that the contractor becomes the owner thereof. Rather, we construe the applicable part of Specification 30 as attaching a reasonable limitation on the ownership in the contractor.

It is next said that the preference given to Atlantic County

540

farmers over farmers in other parts of the state is an unreasonable limitation. With this we do not agree. It is a matter of common knowledge that garbage must be disposed of promptly before the processes of fermentation have caused it to rot and become unsuitable as food for swine, and in light of that fact, it seems a reasonable requirement that farmers be located within the limits of the county.

Examined in its entirety, we do not find anything illegal about Specification 30. The attack on Specification 16 is predicated upon the illegality of Specification 30 and inasmuch as we have held that that is not illegal, the argument addressed to Specification 16 must fall.

It is said that Specification 42 requiring the bidder to be a freeholder of Atlantic County is illegal. We do not think that it is and that its inclusion was a matter of discretion with the City Commission and that there is no proof of bad faith in the exercise of their discretion.

Specification 43 requiring the bidder to have previous experience is in our judgment a reasonable specification in order to insure that the contractor is able to carry out his contract.

We have examined each and every argument advanced by the prosecutor and we find no merit in them.

The writ of *certiorari* is dismissed, with costs.