75 N.J. Super. 173 (1962)
182 A.2d 572
JAMES PETROZELLO COMPANY, INC., ET AL., PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF CHATHAM, ETC., PETER ROSELLE & SONS CO., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1962.
Decided June 22, 1962.
*175 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. John R. Miller argued the cause for appellant Township of Chatham, etc.
Mr. Samuel A. Larner argued the cause for appellants Peter Roselle & Sons, et al. (Messrs. Budd, Larner & Kent, attorneys).
Mr. Merritt Lane, Jr., argued the cause for respondents (Messrs. McCarter & English, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiffs' action in the Superior Court, Law Division, to set aside the township's award of a garbage contract for five years to the defendant contractors resulted in a judgment setting aside the award, and defendants appealed.
The facts are not in dispute. On November 9, 1961 the Township of Chatham advertised for bids for the collection of garbage and other refuse from properties within the municipality, and for the disposal thereof outside the limits of the township for alternate periods of three, four and five years. The "Information for Bidders" called for a lump sum bid for the collection and disposal of the garbage and refuse from all structures in existence upon the commencement of the term of the contract, and also for a unit bid per month charge for each of several categories of structures erected in the future during the term of the contract. Prospective bidders were directed to make a careful examination *176 of the properties in the township from which the garbage and refuse would be collected, as well as the municipal zoning ordinance. Information was given as to the present land uses and the approximate number of existing buildings in each classification. The bidders were referred to the land use provisions in the zoning ordinance and were told that "under present zoning no more than 200 individual apartments [units in apartment houses] could be constructed." There was also furnished a guide for the projection of growth in single-family residences in the form of statistics as to the number of building permits issued for single-family residences in each year from 1956 down through August of 1961. Building permits of single-family residences had varied from a high of 87 in 1956 to a low of 31 in 1958 and in 1960; and through August of 1961, 40 such permits had been issued.
The respective bids of the plaintiff contractors and defendant contractors were as follows:

 Petrozello Roselle
For existing properties  $240,000.00 $245,000.00
 5 years
Each residence constructed
 during term of contract $2.65 per mo. $2.25 per mo.
Each neighborhood business
 constructed during term
 of contract 5.00 per mo. 2.25 per mo.
Each group of six apartment
 buildings constructed during
 term of contract 9.00 per mo. 6.00 per mo.
Each office building constructed
 during term of contract 150.00 per mo. 5.00 per mo.
Each municipal building
 constructed during term
 of contract 25.00 per mo. 5.00 per mo.
Each school constructed
 during term of contract 50.00 per mo. 10.00 per mo.

*177 When the bids were received on December 7, 1961, they were referred to the committee dealing with the subject matter, for study and analysis. The committee reported thereafter that in its judgment new development in the municipality during the five-year term of the contract would result in 48 new residences per year (four per month); 60 apartments occupied in April 1964 (ten groups of six individual apartments); 140 apartments occupied in April 1965 (24 groups of six individual apartments); one office building or research laboratory occupied in April 1965; one municipal building occupied in April 1963; one high school opening in September 1962; and one elementary school opening in September 1965. Applying that prognosis against the unit bids received and adding thereto the lump sum base bids of the two lowest bidding contractors, the committee concluded in its report to the governing body that the total cost over the five-year period to the municipality would be:

 Petrozello ................. $275,422.
 Roselle ..................... $268,156

Accordingly, the township committee determined that Roselle was the lowest bidder and adopted a resolution on February 1, 1962 awarding the garbage contract to it for the period of five years.
The trial court found no fraud, chicanery or design on the part of the municipal officials to favor any bidder. It observed that the narrow question was whether the specifications were proper, "whether they afforded common standards for bidding which would produce sound competition." There was no denial that the committee to which the bids were referred for analysis, as the trial court observed, "made a serious and studious effort to work out probable quantities after the receipt of bids, but there is a serious question as to whether estimates of quantities should not have been submitted to the prospective bidders in the specifications." (Emphasis ours.) The trial court concluded that *178 "the committee in making its estimate used a reasonable and sound approach to the matter, but it erred in not doing so before the bidding for inclusion in the specifications. This is sufficient to vitiate the resolution awarding the contract."
It seems clear that the information upon which the municipal officials based their estimate of future development was available before the receipt of the bids and that the estimates as to structures in the several categories to be erected during the five-year term of the contract could have been made known to the several bidders in advance of the bidding. There is no contention made that the estimates adopted after the bids were received were unreasonable or excessive or made in bad faith. Rather, the position of the plaintiff taxpayer, Goodman, is that the township did not inform prospective bidders that the unit price quotations for future construction would be taken into consideration along with the lump sum base bid in determining who was the lowest bidder; and the failure to promulgate estimates before the reception of bids as to future development left the bidders without a common standard upon which to base their bids and created the possibility of an arbitrary computation of future growth by the municipal officials, so that one bidder rather than another could be favored by the capricious use of these variable factors.
To conform with statutory requirements, N.J.S.A. 40:50-1, specifications in an invitation to bid "must be as definite, precise and full as practicable in view of the character of the work, the quality and quantity of the materials to be furnished." Waszen v. Atlantic City, 137 N.J.L. 535, 537 (Sup. Ct. 1948), reversed on other grounds 1 N.J. 272 (1949). The specifications must "furnish the same information to all prospective bidders, so that there may be intelligent bidding." Phifer v. Bayonne, 105 N.J.L. 524, 525 (Sup. Ct. 1929). To invalidate an award for a deficiency in the specifications, "the irregularity *179 must be of a substantial nature  such as will operate to affect fair and competitive bidding." Phifer v. Bayonne, supra, 105 N.J.L., at p. 527. Invitations for bids in the form of unit prices, under proper circumstances, are not objectionable. Browning v. Freeholders of Bergen, 79 N.J.L. 494 (E. & A. 1910); Armaniaco v. Cresskill, 62 N.J. Super. 476 (App. Div. 1960). However, where the unit price method is employed, fair estimates of the quantities to be ordered should, wherever possible, be specified in advance of the bidding to avoid any possible juggling of the figures in aid of a favorite bidder. Browning v. Freeholders of Bergen, supra. The giving of the estimates is for the express purpose of forming a basis for the "uniform comparison of bids." Walter v. McClellan, 113 App. Div. 295, 99 N.Y.S. 78, 79 (App. Div. 1906); Interstate Power Co. v. Forest City, 225 Iowa 490, 281 N.W. 207 (Sup. Ct. 1938); Best v. City of Omaha, 138 Neb. 325, 293 N.W. 116 (Sup. Ct. 1940); 10 McQuillin, Municipal Corporations (3d ed. 1950), § 29.54, p. 316.
Plaintiffs do not attack the propriety of seeking unit price bids. Rather, they rely mainly on the failure of the township to furnish in advance of the receipt of bids any estimates of quantities, upon the basis of which there could be a uniform comparison of the bids and determination of the lowest responsible bidder. Of course, the plaintiff contractors are without legal standing to challenge the validity of the specifications, not being taxpayers of the defendant municipality. Waszen v. Atlantic City, 1 N.J. 272, 276 (1949). "The rationale of such a holding is that one cannot endeavor to take advantage of a contract to be awarded under illegal specifications and then, when unsuccessful, seek to have the contract set aside." Ibid. See, too, Camden Plaza Parking v. Camden, 16 N.J. 150 (1954); Armaniaco v. Cresskill, supra, 62 N.J. Super., at p. 480. However, the judgment in the instant case was entered in favor of the individual taxpayer, Goodman, who joined as a party plaintiff. He did have legal standing to *180 challenge the municipal action. The bidding statutes "are for the benefit of the taxpayers and not the bidders; they should be construed with sole reference to the public good; and they should be rigidly adhered to by the courts." Hillside Twp. v. Sternin, 25 N.J. 317, 322 (1957).
In the instant case, by failing to indicate estimates before bids were received, it lay within the arbitrary power of the township committee to favor either of these two low bidders. If it were desired that Petrozello should get the contract, expected future growth and the times thereof in the several categories could have been minimized so that the $5,000 differential in Petrozello's lump sum bid for removal of garbage from existing structures would not have been offset by his higher unit price bids on future buildings. Justification for such a pessimistic viewpoint could have been found in local statistics showing a diminishing of building permits issued for new residences; in the absence of garden-type apartments in the community and the unlikelihood of such development unless liberal zoning amendments were adopted; in the need for a central sewerage system whose cost might present a local financial problem; and by regarding the construction of a new office building, municipal building, and an elementary school as not probable during the life of this garbage contract. Conversely, future development could have been viewed optimistically, if the committee wanted to favor Roselle with his lower unit prices as to future buildings to whatever extent needed to overcome Petrozello's differential of $5,000 on the base bid.
Defendants contend that the municipal estimate of future growth was conservative and reasonable and that the plaintiffs have not furnished any proof to the contrary. They further allege that even if a more conservative estimate of future growth had been adopted, Roselle would still be the lowest bidder on the overall total cost. They point out that if there were no apartment development, no office building or research laboratory development, no neighborhood business *181 development, and only one-half of the predicted number of new residences were constructed each year, the total contract cost under Petrozello's bid would be $254,599, as compared with $254,215 under Roselle's bid. On the other hand, plaintiffs point out that if the apartments and office buildings were deducted from the bids and also the new high school, which Petrozello included in his bid as an existing structure although it will not be completed until September 1962, and Roselle did not, then the total cost under the Petrozello bid would be $261,548 as compared with $262,450 under the Roselle bid. While we have not verified these several calculations and assume for present purposes the correctness thereof, the shifting figures do indicate the flexibility of action which the township committee could indulge depending upon sheer judgment in the use of the divining rod. We cannot give legal sanction to the determination of the lowest bidder for a municipal contract upon such a variable standard brought into play with definiteness for the first time after the bids have been received.
Where there is no standard or norm to guide or control the exercise of the municipal power, the possibility of partiality or even fraud is present. Where such possibility is present, that is enough to set aside the municipal action. There is no need to prove actual fraud or favoritism or collusion. The absence of proof of corrupt motives does not preclude the judicial remedy. The municipal action will be vacated where it amounts to a fraud on the bidding statute, even in the presence of good faith. Jersey City Merchants Council v. Jersey City, 71 N.J. Super. 156, 163-164 (App. Div. 1961); Summer Cottagers' Ass'n of Cape May v. Cape May, 19 N.J. 493, 501 (1955); Asbury Park Press, Inc. v. Asbury Park, 23 N.J. 50, 53-54 (1956).
For the foregoing reasons, we believe that the trial court was amply justified in setting aside the contract in the instant case and that its judgment should be affirmed.
*182 Defendants also argue that the plaintiff taxpayer was barred from attacking the specifications because of the limitations contained in R.R. 4:88-15 and equitable laches. We find no merit in this contention. The complaint was filed on February 6, 1962, only five days after the award of contract. We find no unreasonable delay and no laches. Assuming that the specifications should have been challenged earlier, it is manifest here that the interests of justice and the public welfare warrant relaxation of any time limitation. See R.R. 4:88-15(c).
Judgment affirmed.