181 N.J. Super. 403 (1981)
437 A.2d 914
SATURN CONSTRUCTION COMPANY, INC., PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
BOARD OF CHOSEN FREEHOLDERS, MIDDLESEX COUNTY, NEW JERSEY, DEFENDANT-RESPONDENT,
v.
M. GORDON CONSTRUCTION COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1981.
Decided November 4, 1981.
*405 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Barry J. Donohue argued the cause for plaintiff-cross-appellant (Tunstead & Donohue, attorneys; James J. Ross, Jr., on the letter briefs).
John J. Hoagland, County Counsel, argued the cause for respondent.
Theodore W. Geiser argued the cause for appellant (Connell, Foley & Geiser, attorneys; Theodore W. Geiser and Mark L. Fleder of counsel; Thomas S. Cosma on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Saturn Construction Company, Inc. (Saturn) initiated this action by verified complaint alleging that the Board of Chosen Freeholders of Middlesex County (county) wrongfully awarded a *406 contract for general construction of the Middlesex County Correctional Facility to M. Gordon Construction Company, Inc. (Gordon). Saturn claimed that because it was the lowest bidder, it was entitled to the contract; Saturn named both the county and Gordon as defendants.
After hearing argument on two separate dates, the trial judge entered an order declaring the award of the contract to Gordon null and void and ordering the county to readvertise and rebid.
The county solicited bids on six separate contracts for construction of a correctional facility:
Contract No. 1  General Construction
Contract No. 2  Structural Steel
Contract No. 3  Plumbing & Fire Protection
Contract No. 4  Heating, Ventilating & Air-Conditioning
Contract No. 5  Electrical Work
Contract No. 6  Detention Work
Pursuant to Articles 10.1, 12, 13 and 19 of the "Instructions to Bidders," Gordon and Saturn each submitted (1) a bid on the general construction contract, (2) bids on alternates relating to that contract and (3) a percentage they would require if the county chose to assign the responsibility of administering the other five contracts to the contractor for general construction. The bids were as follows:

 % FOR
 BASE BID ALTERNATES ASSIGNMENT
 GORDON $7,065,000.00 $1,305,300.00 3%
 SATURN $6,980,000.00 $1,274,000.00 55%[1]
On August 6, 1981, the county awarded the bid to Gordon. The county and Gordon contend that Gordon was the lowest *407 responsible bidder even if the bids are considered in the light most favorable to Saturn.

 % FOR
 BASE BID ALTERNATES ASSIGNMENT TOTAL
 (3%)
 GORDON $7,065,000.00 $1,305,300.00 $225,433.00 $8,595,733.00
 (5.5%)
 SATURN $6,980,000.00 $1,274,000.00 $413,294.36 $8,667,294.36

Saturn does not dispute these figures but contends that the county should not have considered the percentage for assignment figure in determining the lowest responsible bidder.
An unsuccessful bidder cannot challenge the specifications after the opening of the bids. Camden Plaza Parking v. Camden, 16 N.J. 150, 158 (1954); Waszen v. Atlantic City, 1 N.J. 272, 276 (1949); James Petrozello Co., Inc. v. Chatham Tp., 75 N.J. Super. 173, 179 (App.Div. 1962). We recently relaxed that rule in Blondell Vending v. State, 169 N.J. Super. 1, 9-10 (App. Div. 1979), certif. den. 81 N.J. 333 (1979). There, the parties to the appeal did not raise the standing issue and this court decided to "assume  in the interest of justice and our policy to take a liberal view of standing [citations omitted]  that appellant [did] have the requisite standing in the case." Id. at 9-10. We do not feel constrained to apply the relaxed standing rule in Blondell here. Accordingly, Saturn does not have standing to challenge the specifications.
Saturn claims that it does not challenge the specifications. It claims to challenge the award to Gordon on the basis of its entitlement to the award. An unsuccessful bidder may make such a challenge. Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 479-480 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972).
The question is whether Saturn, by phrasing its complaint to request relief as the lowest responsible bidder, should be given standing to make what is in actuality a challenge involving interpretation of the specifications.
*408 Typically, lowest responsible bidder challenges involve the contracting authority's right to consider factors involving the bidder's responsibility, e.g., Trap Rock Industries, Inc. v. Kohl, supra, or its failure to consider defects in the bid submitted by the party who is awarded the contract, e.g., In re Route 280 Contract, 179 N.J. Super. 280, 282-283 (App.Div. 1981), or defects in the procedures, e.g., Remsco Assoc. v. Raritan Tp. Mun. Util Auth., 115 N.J. Super. 326, 333-334 (App.Div. 1971).
The Supreme Court has stated that an unsuccessful low bidder has standing to challenge "to the end that the public will obtain all that is due it in the procurement process, rather than for his individual aggrandizement." Trap Rock Industries, Inc. v. Kohl, 59 N.J. at 480.
Saturn only challenges the award to Gordon on the basis of an arguable ambiguity in the bidding specifications. It does not claim that Gordon is unqualified, nor does it claim that its overall bid is lower than Gordon's. Its only basis for stating that it is the lowest bidder is found by interpreting the specifications to allow the county to award a contract by ignoring one of the mandatory bid items. We find this to be a challenge to the specifications, and that to find standing in this case would not further the public's interest but would merely give Saturn another chance.
The relief granted by the trial judge was relief which is appropriate where specifications are invalid. Saturn did not have standing to request such relief, and no taxpayer with such standing was a party. Cf. James Petrozello Co., Inc. v. Chatham Tp., 75 N.J. Super. 173, 179 (App.Div. 1962) (noting plaintiff contractor did not have standing to challenge the validity of the specifications but that plaintiff taxpayer did).
In any event, we believe that while there was, arguably, some ambiguity as to whether the percentage of assignment was to be considered in determining the lowest bidder, that ambiguity is minimal and the county's construction of the bidding specifications supports the policies fostered by the Local Public *409 Contracts Law. This court has recently directed the Commissioner of Transportation to "bear in mind that public policy favors awards to the lowest responsible bidder so long as fair competition in bidding is not impaired." In re Route 280 Contract, supra, 179 N.J. Super. at 285.
Paragraph 10.0 is entitled "Basis of Award of Contract"; sub-paragraph 10.1 provides:
10.1 Inclusion of Alternatives
For each contract where alternatives are given, the total price bid to be used in determining the lowest bid shall be the total sum of the base bid and the alternative(s) that the County wishes to include in the contract. The County shall determine the number of alternatives to be included in the contract at a date subsequent to the opening of bids. The County's decision as to which alternatives are to be included shall be final in all instances. The amount of the alternative should be entered separately in the space provided on the bid form. [emphasis supplied].
Saturn argues that two items are to be included in determining the lowest bid for the general construction contract: (1) the base bid and (2) the alternatives. Saturn argues that "alternatives" refers to the "alternates" specified in paragraph 12.0. That paragraph provides:
12.0 ALTERNATES
Each Bidder must submit prices for Alternate Bids as related to his Contract of work. Failure to submit any Alternate requested shall mean the Bid is incomplete and will be rejected by the Owner. [emphasis in original].
In contrast, Gordon argues that the word "alternatives" in paragraph 10.1 refers to the "alternates" specified in paragraph 12.0 and the bid for percentage of assignment required by paragraph 13.0.
13.0 ASSIGNMENT OF CONTRACTS
The General Construction Bidder for Contract No. 1 must submit a percentage required by him should the Owner assign the other Prime Contracts to the General Construction Contract. Refer to the Supplementary Conditions for further description of Assignment of Contracts. [emphasis in original]
While Saturn equates the words "alternatives" and "alternates," Gordon emphasizes the choice of different words and argues that "alternative" is used so as to include the percentage of assignments. The county agrees with Gordon's construction of the specification.
*410 Saturn also points to Article 19.3 on "Assignment of Contract" to support its position. It states:
The percent of those Contracts assigned shall be a percent of the assigned Contractor's lump sum cost and shall include any accepted Alternates and any "extras" that may occur. The percent shall be as determined from successful Contractor's Bid Form. [Emphasis supplied]
Saturn argues that this language indicates that a low bidder is selected and that subsequently the percentage for assignment is determined from that successful bidder's form. We disagree.
We note one further portion of the contract that supports the position of Gordon and the county. A comparison of the bid form supplied for the general construction contract with that supplied for the structural steel contract indicates that the term "base bid" employed in paragraph 10.1 refers to both the total price bid and the percentage for assignment:
Contract No. 1  General Construction
the undersigned hereby proposes to fulfill all of the requirements stated or reasonably inferred from the Contract Documents for Contract No. 1 for the sum of:
 TOTAL PRICE $ _________________
 $ _________________________________________________
 (In Words)
The undersigned hereby proposes to fulfill all of the requirement: of Assignment of Contracts described in the Supplementary Conditions as ____% of the cost of the Contracts assigned.
Contract No. 2  Structural Steel
the undersigned hereby proposes to fulfill all of the requirements stated or reasonably inferred from the Contract Documents for Contract No. 2 for the sum of:
 TOTAL PRICE $ _________________
 $ _________________________________________________
 (In Words)
Saturn's construction is strained when the instructions and bid forms are viewed as a whole. Both paragraphs 12 and 13 informed general construction bidders that they "must" submit *411 prices for the alternate bids and percentage for the assignment of contracts. The bid form provided a blank for the inclusion of the percentage required by paragraph 13. When these specifications are evaluated objectively, Kotter v. East Brunswick Tp., 160 N.J. Super. 462, 469 (App.Div. 1978), the reasonable construction is that the percentage requirement was a factor to be considered in determining the lowest bid.
Specifications for bids on contracts regulated by the Local Public Contracts Law must "be drafted in a manner to encourage free, open and competitive bidding." N.J.S.A. 40A:11-13. This statute and its predecessor have been construed to require specifications that are unmistakably clear because ambiguous terms "may seriously affect the purpose of competitive bidding." Pucillo v. New Milford, 73 N.J. 349, 355 (1977). The specifications must "prescribe a common standard on all matters that are material to the proposals, [so] that interested persons may bid intelligently and will be induced to bid by the promise of impartiality which only specifications of that quality can give." Greenberg v. Fornicola, 37 N.J. 1, 6 (1962) (emphasis added). It is well settled that the purpose of the public contract law is to protect the public by placing bidders on equal footing and ensuring that competition will eliminate the possibility of fraud, extravagance, or favoritism in the expenditure of pubic funds. Shakel v. North Bergen, 37 N.J. 369, 378-379 (1962). The inconsequential ambiguity claimed here did not undermine fair competition. The parties were clearly required to submit bids on three separate items; they did so. It is accepted that minor deviations from bidding requirements may be waived where such deviations do not interfere with competitive bidding. See, e.g., In re Route 280 Contract, supra, 179 N.J. Super. at 284-285 (App.Div. 1981); Marvec Allstate, Inc. v. Gray & Fear, Inc., 148 N.J. Super. 481 (App.Div. 1977). Minor ambiguity should also be tolerated where policies of competitive bidding will be fostered and the award will go to the lowest bidder.
*412 The judgment of the Law Division is reversed, and the award of the contract to defendant-appellant Gordon Construction Company, Inc. is reinstated.
NOTES
[1] Shortly after the bids were opened the executive vice-president of Saturn wrote to the county and indicated that Saturn's bid for percentage of assignment should be 5.5% and not 55%.