949 A.2d 861 (2008)
401 N.J. Super. 203
JEN ELECTRIC, INC., Plaintiff-Appellant,
v.
COUNTY OF ESSEX, Defendant-Respondent.
No. A-3957-07T1
Superior Court of New Jersey, Appellate Division.
Argued June 3, 2008.
Decided June 24, 2008.
*863 Suzanne M. Cerra argued the cause for appellant (Nukk-Freeman & Cerra, P.C., Short Hills, attorneys; Ms. Cerra, Kerrie R. Heslin, and Kristine V. Ryan, on the brief).
Mitchell W. Taraschi, Roseland, argued the cause for respondent (Connell Foley, LLP, attorneys; Mark L. Fleder and Mr. Taraschi, of counsel; Mr. Taraschi and Christine I. Gannon, on the brief).
Before Judges SKILLMAN, YANNOTTI and LeWINN.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
Plaintiff JEN Electric, Inc. appeals from an order entered by the trial court on April 4, 2008, which dismissed plaintiff's complaint on the ground that plaintiff did not have standing to challenge bidding specifications issued by defendant County of Essex for a contract to undertake certain traffic signal and road improvements on Central Avenue in Newark, New Jersey. Plaintiff also appeals from an order entered by the trial court on March 19, 2008, which denied plaintiff's motion for leave to file an amended complaint naming Daidone Electric, Inc., a bidder on the contract, as an additional plaintiff. For the reasons that follow, we affirm.

I.
In October 2007, the County publicly advertised for the submission of bids on the contract for the Central Avenue project, which requires, among other things, the successful bidder to provide a traffic control system, video car detection devices and related electronic equipment, and computer software. Plaintiff is a vendor that distributes the PEEK Traffic Control System line of products, which are manufactured by Quixote Corporation. Plaintiff objected to the specifications on the ground that they required equipment and software manufactured by Econolite and did not afford bidders the opportunity to propose products that were the functional equivalent of the Econolite equipment and software.
Thereafter, the County issued an addendum to the specifications which indicated that the County would accept products that were the equivalent of any brand name products designated in the specifications. The addendum also stated that pre-qualification of alternative products was not required. Bids were submitted in response to the request for proposals, but the County elected to reject all of the bids and seek new proposals.
In December 2007, the County issued revised specifications for the project, calling for the submission of bids by January 10, 2008. Plaintiff claimed, however, that the revised specifications were more restrictive than those issued in October 2007 because they allegedly made it impossible for products to be considered the equal of those specified in the bidding documents.
In a letter dated December 21, 2007 to Leonard Sorge, the County's principal buyer, Frank Dobiszewski, plaintiff's vice-president of engineering, asserted that the "form and content" of the revised specifications violated the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -51, because the specifications for certain equipment "are for a specific manufacturer (Econolite), with no approved equal provision."
Dobiszewski asserted that there was only one vendor in the State who could supply the necessary traffic signal equipment identified in the bid specifications. He stated that, "[a]s a supplier of a competing *864 brand that can meet or exceed the specific brand listed, [plaintiff] feel[s] [that] this unfair practice is in direct violation of the public bid process." Dobiszewski requested that the County postpone the bid opening "until the specifications can be reviewed and amended."
Sorge responded to Dobiszewski in a letter dated December 24, 2007. He stated that, as indicated in the bid specifications, the County "ALWAYS" accepts an equivalent to any brand name product identified as a requirement in its public bidding specifications. Sorge added that "the equivalent [product] must meet or exceed the specification of the brand stated in the bid and it is the responsibility of the bidder to prove that the equivalent meets or exceeds specification."
On December 26, 2007, the County issued a clarification to the bidding documents, which stated that the specifications "should read Econolite or equal (equivalent) in all sections of the specification[s]." The clarification additionally stated that the equivalent products "must meet or exceed" the bidding requirements.
On December 27, 2007, Dobiszewski again wrote to Sorge. He stated that the revised bid specifications favored a particular "sole source" vendor for the Econolite traffic signal equipment, despite the fact that "generic specifications exist." Dobiszewski asserted that the specifications were unlawfully restrictive. Dobiszewski cited the LPCL, the regulations adopted by the Department of Community Affairs (DCA) pursuant to the LPCL, as well as a federal regulation that pertains to the use of federal funds on state and local highway projects, 23 C.F.R. § 635.411 (2008).
Dobiszewski additionally asserted that the County was overpaying for its traffic signal equipment and that "the total traffic signal equipment package cost given to [c]ontractors from us and another competing supplier was approximately $650K lower than" the supplier of the Econolite products. He asked that the bid specifications "be revised to a generic format in order to provide a fair and open bidding process."
Sorge replied in a letter dated January 3, 2008. He stated that the County had given careful consideration to Dobiszewski's concerns but reaffirmed the County's position that the bid specifications were in full compliance with the LPCL and all applicable federal and state regulations. Sorge indicated that the date for the submission of bids would not be extended and bids would be opened on January 10, 2008.
Sorge added that, as noted in the clarification to the specifications dated December 26, 2007, the County "ALWAYS" accepts equivalents to any "BRAND NAME" specified in a request for bids. He stated that it was the County's "understanding that equivalents to Econolite [b]rand [p]roducts in the specification are commercially available."
On January 8, 2008, plaintiff filed an action in lieu of prerogative writs in the Law Division in which it alleged that the County's revised bid specifications violated the LPCL and certain state and federal regulations. Plaintiff claimed that the specifications were unlawfully restrictive because certain of the requirements for equipment and software were identified by manufacturer, rather than nationally-recognized, generic standards.
Plaintiff asserted that the County had designated five brand-name products to be used on the project, specifically products manufactured by Econolite, Pelco, Clary, Safetran, and APX.[1] Plaintiff alleged that *865 the specifications were invalid "because they foreclose[d] the possibility that a vendor [could] supply non-brand name equivalents for any of these products, in direct violation of both federal and state bidding laws."
Plaintiff sought an order declaring the bidding specifications null and void, directing the County to immediately issue an addendum to the specifications that complies with the LPCL and the applicable state and federal regulations, and enjoining the County from awarding any contract based on the current "illegal" bid specifications.
On January 9, 2008, the trial court entered an order temporarily restraining the County from awarding a contract based on the challenged bidding specifications until further order of the court. The court ordered the County to show cause why a preliminary injunction should not be entered enjoining the County from proceeding with the contract. The court also ordered expedited discovery and required that it be completed in advance of the hearing on plaintiff's application for a preliminary injunction.
On January 10, 2008, the County received eight bids on the contract, including a bid from Daidone. The specifications did not require the bidders to identify the products that they would supply in performance of the contract. Therefore, the bids do not reveal whether the bidders contemplated using Econolite products, PEEK products, or any other products in fulfilling the contract requirements.
In its response to the order to show cause, the County argued that the bidding specifications were not unlawful. The County also argued that plaintiff did not have standing to challenge the County's bid specifications because it was not a bidder or prospective bidder on the contract, and was not a taxpayer in Essex County.
Plaintiff thereupon filed a motion seeking leave to amend its complaint to add Daidone as a plaintiff. The County opposed the motion, arguing that Daidone had waived its right to challenge the bid specifications by submitting a bid for the contract without challenging the specifications within the time required by N.J.S.A. 40A:11-13(e). The statute provides in pertinent part that:
[a]ny prospective bidder who wishes to challenge a bid specification shall file such challenges in writing with the contracting agent no less than three business days prior the opening of the bids. Challenges filed after that time shall be considered void and having no impact on the contracting unit or the award of a contract.
Plaintiff argued, however, that Daidone had objected to the specifications in a letter to the County dated January 2, 2008. The trial court disagreed, finding that Daidone had merely sought clarification of the bidding requirements and never stated in the letter that it was challenging the specifications. Accordingly, the court denied plaintiff's motion to amend the complaint by order dated March 19, 2008.
The court scheduled a hearing on plaintiff's motion for a preliminary injunction. At the hearing, the trial court decided to dismiss plaintiff's complaint. The court found that, because plaintiff was not a bidder, prospective bidder, or Essex County taxpayer, it did not have standing to challenge the bid specifications.
*866 After the court rendered its decision, plaintiff orally renewed its motion to amend the complaint to add Daidone as a plaintiff. The trial court denied the application because plaintiff had not filed a motion seeking that relief, and because the complaint had already been dismissed.
On April 3, 2008, plaintiff moved in the trial court for a stay pending appeal. The court denied the motion. On April 4, 2008, the court entered an order which dismissed plaintiff's complaint with prejudice, vacated the restraints previously imposed, and authorized the County to award a contract for the project.
Plaintiff filed a notice of appeal on April 8, 2008, and moved on an emergent basis for a stay of the trial court's April 4, 2008 order pending appeal. On April 17, 2008, we denied plaintiff's motion. Thereafter, plaintiff sought relief in the Supreme Court. On May 5, 2008, the Supreme Court granted plaintiff's motion for a stay pending appeal. We thereupon expedited the appeal.

II.
Plaintiff first argues that the trial court erred by finding that it did not have standing to challenge the County's bidding specifications. We disagree.
The purpose of competitive bidding statutes "is to secure competition and guard against favoritism, improvidence, extravagance and corruption." Trap Rock Indus., Inc. v. Kohl, 59 N.J. 471, 479, 284 A.2d 161 (1971) (quoting Hillside Twp. v. Sternin, 25 N.J. 317, 322, 136 A.2d 265 (1957)). Our public bidding laws "are for the benefit of the taxpayers and not the bidders; and they should be construed with sole reference to the public good[.]" Ibid. Therefore, it is in the public interest "to permit suits to enforce the policy" of the public bidding laws. Ibid.
However, our case law has limited the class of persons or entities with standing to bring such lawsuits. Indeed, it is well established that only taxpayers, bidders, and prospective bidders may challenge the award of a contract to the successful bidder. L. Pucillo & Sons, Inc. v. Twp. of Belleville, 249 N.J.Super. 536, 542-43, 592 A.2d 1218 (App.Div.1991); Band's Refuse Removal, Inc. v. Borough of Fair Lawn, 62 N.J.Super. 522, 539, 163 A.2d 465 (App.Div.1960), certif. denied, 34 N.J. 67, 167 A.2d 55 (1961). See also Trap Rock, supra, 59 N.J. at 479, 284 A.2d 161 (stating that taxpayers and bidders have standing to challenge the award of publicly bid contracts); Warnock Ryan Leasing, Inc. v. State, Dep't of Treasury, 194 N.J.Super. 11, 16, 475 A.2d 1270 (App.Div. 1984) (holding that taxpayers have standing to challenge the award of a public contract); Advance Elec. Co., Inc. v. Montgomery Twp., 351 N.J.Super. 160, 168 n. 1, 797 A.2d 216 (App.Div.) (noting that an unsuccessful bidder has standing to challenge the award of a public contract), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002).
Furthermore, our case law has established additional pre-requisites for challenges to bidding specifications issued by contracting units pursuant to the public bidding laws. New Jersey courts will not entertain a challenge by a bidder to bidding specifications after the bids have been opened. Camden Plaza Parking, Inc. v. City of Camden, 16 N.J. 150, 158-59, 107 A.2d 1 (1954); Waszen v. City of Atl. City, 1 N.J. 272, 276, 63 A.2d 255 (1949); Saturn Constr. Co. v. Bd. of Chosen Freeholders, 181 N.J.Super. 403, 407, 437 A.2d 914 (App.Div.1981); James Petrozello Co., Inc. v. Chatham Twp., 75 N.J.Super. 173, 179, 182 A.2d 572 (App.Div.1962). The "rationale of such a holding is that one cannot endeavor to take advantage of a contract *867 to be awarded under illegal specifications and then, when unsuccessful, seek to have the contract set aside." Waszen, supra, 1 N.J. at 276, 63 A.2d 255; see also Sevell's Auto Body Co., Inc. v. N.J. Highway Auth., 306 N.J.Super. 357, 369-70, 703 A.2d 948 (App.Div.1997) (bidder has standing to challenge bid specifications if the bidder commenced its action prior to the bid submission date), certif. denied, 153 N.J. 51, 707 A.2d 154 (1998).
In addition to the requirement under our case law that prospective bidders on publicly bid contracts challenge the bidding specifications before the opening of bids, the LPCL establishes the time frame within which such a challenge must be made and the consequences of failing to do so. N.J.S.A. 40A:11-13(e) provides that any "prospective bidder" who wishes to challenge a bidding specification issued pursuant to the LPCL must do so in writing "no less than three business days prior to the opening of the bids." Ibid. The statute further provides that any challenge to the bid specifications raised after that time is considered "void" and will have "no impact on the contracting unit or the award of a contract." Ibid.
Plaintiff brought this action to challenge the County's bidding specifications. However, plaintiff concedes that it is not an Essex County taxpayer. Plaintiff also concedes that it was not a direct bidder on the contract and never intended to submit a direct bid in response to the request for proposals. In his deposition, Dobiszewski testified as follows:
Q. At the time this was going on in December of 2007 and 2008 was [plaintiff] considering or intending to be a primary bidder to Essex County on this project?
A. No.
Q. By the way, to fall back to the original round of bidding. Did [plaintiff] ever consider or intend to be a primary bidder for the project on the first round of bidding?
A. No.
Because plaintiff is not a taxpayer in Essex County, did not submit a direct bid on the contract, and never intended to submit a direct bid in response to the specifications, plaintiff does not have standing under our case law to maintain this action.
Plaintiff nevertheless argues that it should be considered a "prospective bidder" under N.J.S.A. 40A:11-13(e) and deemed to have standing under the statute to challenge the bidding specifications. In a certification filed in the trial court, Dobiszewski stated:
The only distinction between [plaintiff] and a "direct" bidder is that, instead of submitting its bid for the traffic signal equipment and services it wishes to supply on this Project directly to the County, [plaintiff] instead submits its bid to the general contractor on the Project. The general contractor, in turn, incorporates [plaintiff's] bid into the overall bid it submits to the County. In fact, the County would not accept a direct bid for just the traffic control equipment from [plaintiff] or [a] similar subcontractor. Thus, the only way to submit a bid for this equipment is via a general contractor.
Plaintiff argues that we should interpret the term "prospective bidder" in N.J.S.A. 40A:11-13(e) expansively to foster the goals of the public bidding laws.
We note, however, that N.J.S.A. 40A:11-13(e) does not confer standing upon a "prospective bidder" to maintain an action in our courts to challenge bidding specifications. Rather, the statute simply imposes limitations upon challenges to bid specifications by prospective bidders. As we have pointed out, the statute requires that, *868 if a "prospective bidder" wishes to challenge bid specifications, it must make its objections in writing to the contracting unit no less than three business days prior to the date established for the opening of the bids. The statute also makes clear that a challenge raised after that time is void and will have "no impact on the contracting unit or the award of a contract."
In any event, we conclude that an entity that proposes to furnish equipment to a direct bidder on a public contract should not be considered a "bidder" or "prospective bidder" under our case law or N.J.S.A. 40A:11-13(e). A contrary conclusion would be at variance with the ordinary meaning of the term "bidder."
A "bid is both an offer and a unilateral contract; when it is accepted, it becomes a mutually binding contract." Cataldo Constr. Co. v. Essex County, 110 N.J.Super. 414, 417, 265 A.2d 842 (Ch.Div. 1970). Consequently, in order to acquire the status of a "bidder," an entity must submit a proposal to enter into a mutually binding agreement with the governmental body. An entity that merely supplies equipment to a general contractor cannot be considered a "bidder."
Plaintiff additionally argues that we should give an expansive interpretation to the term "prospective bidder" because such an interpretation would be in the public interest. Plaintiff contends that direct bidders may not have an incentive to challenge bid specifications that might unlawfully exclude a particular supplier's products. Again, we disagree.
We reject the view that a direct bidder on a publicly bid contract does not have an incentive to challenge bidding specifications that may unlawfully restrict the use of certain equipment in the performance of the contract. We must assume that a direct bidder would be inclined to challenge the specifications if the bidder believes that it might be able to offer a lower price if the restriction were eliminated.
Plaintiff also contends that it has standing to challenge the County's bid specifications under general standing principles. We recognize that, in many contexts, New Jersey courts have taken a liberal approach to the issue of standing. Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107, 275 A.2d 433 (1971). However, as we have explained, our case law makes clear that only taxpayers and prospective bidders may bring lawsuits to challenge bidding specifications for publicly bid contracts. Despite these limitations, our case law already permits a wide array of individuals and entities to bring lawsuits to challenge bidding specifications.
We are not persuaded that the public's interest in the effective enforcement of our bidding laws requires that we also confer standing upon an entity like plaintiff which is not a taxpayer in the contracting unit and does not bid directly on a public contract, but wants to supply equipment and software to the direct bidders.
We therefore conclude that plaintiff does not have standing under New Jersey's case law or the LPCL to challenge the County's bidding specifications.

III.
We turn to plaintiff's contention that, because the Central Avenue road improvement project is being undertaken with federal funds, it has standing under federal law to pursue its challenge to the County's specifications. In our view, plaintiff's argument is entirely without merit.
Plaintiff alleges that the County's bidding specifications violate the Federal-Aid Highway Act (FAHA), 23 U.S.C.A. §§ 101 to 166 (2008). The FAHA establishes certain *869 requirements when federal monies are used for state and local highway improvements. The FAHA provides, among other things, that a contract for a federal-aid highway project undertaken by a state or local government generally shall be awarded as a result of competitive bidding to the lowest responsive bid. 23 U.S.C.A. § 112(b)(1). The FAHA further provides that the state or local government may not enter into a contract awarded as a result of competitive bidding "without the prior concurrence of the Secretary [of Transportation] in the award thereof." 23 U.S.C.A. § 112(d).
In addition, 23 C.F.R. § 635.411 provides that:
[f]ederal funds shall not participate, directly or indirectly, in payment for any premium or royalty on any patented or proprietary material, specification, or process specifically set forth in the plans and specifications for a project, unless:
(1) Such patented or proprietary item is purchased or obtained through competitive bidding with equally suitable unpatented items; or
(2) The State transportation department certifies either that such patented or proprietary item is essential for synchronization with existing highway facilities, or that no equally suitable alternate exists; or
(3) Such patented or proprietary item is used for research or for a distinctive type of construction on relatively short sections of road for experimental purposes.
[Ibid.]
We note that, although plaintiff maintains that the County's bid specifications contravene 23 U.S.C.A. § 112 and 23 C.F.R. § 635.411, plaintiff has not cited any provision of the FAHA or the federal regulations that expressly confers standing upon it to bring a lawsuit to pursue its claims.
Nevertheless, in support of its contention that it has standing under federal law to pursue its challenge to the County's bid specifications, plaintiff relies upon Glasgow, Inc. v. Fed. Highway Admin., 843 F.2d 130 (3d Cir.1988). In that case, the Pennsylvania Department of Transportation (PennDOT) sought bids on a contract for the completion of a portion of a federal-aid highway. Id. at 132. Glasgow, Inc. submitted the lowest bid. Ibid. Initially, the PennDOT rejected Glasgow's bid but later, after Glasgow brought an action in the Pennsylvania courts challenging that decision, the PennDOT awarded the contract to Glasgow. Ibid. However, the Federal Highway Administration (FHWA) refused to concur in the award. Id. at 133. Glasgow filed a complaint in the federal district court challenging the FHWA's action. Ibid. The federal district court enjoined the FHWA from withholding its concurrence. Id. at 130.
On appeal, the FHWA argued, among other things, that Glasgow did not have standing to maintain the action. Id. at 134. The Court of Appeals for the Third Circuit noted that when a plaintiff challenges an action of a federal agency, its standing is determined under the "zone of interest test" established by the Supreme Court of the United States. The court stated that:
[t]he zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes *870 implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would be plaintiff. [Footnote omitted].
[Id. at 134-35 (quoting Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399-400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757, 769 (1987)).]
The court observed that, although Glasgow was not the subject of the FHWA's action, its interest in the contract as a disappointed bidder was not "so marginal" that it should be precluded from bringing suit. Id. at 135. The court added:
On the other hand, there is a substantial basis to conclude that Glasgow does not have standing in this case. It is PennDOT and not Glasgow which sought the federal aid. Further[,] Glasgow's bid was delivered to PennDOT and not the FHWA and it is with PennDOT, if any agency, that Glasgow will contract. Further, Congress enacted the Act to advance the public interest and not to benefit individual contractors. 23 U.S.C. § 101. We also note that PennDOT has not joined in this action nor has it brought its own case against the FHWA by reason of FHWA's refusal to concur in the award. Therefore it would not be unreasonable to conclude that Glasgow is asserting the legal interests of a third party which does not care to pursue them itself. In that circumstance[,] it could be reasonably held that Glasgow does not have standing.
[Id. at 135-36.]
Ultimately, the court elected not to decide the issue of standing. Id. at 136 n. 3.
In our view, plaintiff's reliance upon Glasgow is misplaced. As noted, the Glasgow case involved a challenge by a disappointed low bidder to a decision by the FHWA to withhold consent for the contract award. In this matter, the record does not indicate whether the FHWA has concurred in the award of the contract for the Central Avenue road improvement project. Thus, there is no federal agency action at issue and the FHWA is not a party to this case.
Furthermore, the court in Glasgow expressed doubt as to whether the plaintiff had standing to challenge the FHWA's decision to withhold its consent for the contract despite the fact that the plaintiff was the low bidder and the PennDOT was prepared to award it the contract. In this case, plaintiff was not the low bidder on the contract. Indeed, plaintiff was not a direct bidder or prospective bidder on the contract. Plaintiff is merely a supplier of products that it would like to have used in the performance of the contract. In our view, the Glasgow case does not support plaintiff's contention that it has standing to pursue its federal claims in this matter.

IV.
We turn to plaintiff's contention that the judge erred by denying its motion to amend the complaint to add Daidone as a plaintiff.
The standard that governs our review of the trial court's March 19, 2008 order is well established. A decision on a motion to amend a pleading "is generally left to the sound discretion of the trial court . . . and its exercise of discretion will not be disturbed on appeal, unless it constitutes a `clear abuse of discretion.'" Franklin Med. Assocs. v. Newark Pub. Sch., 362 N.J.Super. 494, 506, 828 A.2d 966 (App.Div.2003) (quoting Salitan v. Magnus, 28 N.J. 20, 26, 145 A.2d 10 (1958)). The trial court's exercise of discretion requires a two-step analysis: "whether the *871 non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501, 888 A.2d 464 (2006).
Here, the trial court found that adding Daidone as a plaintiff would be futile because Daidone was barred by N.J.S.A. 40A:11-13(e) from challenging the bid specifications. As we stated previously, a prospective bidder on a publicly advertised contract that wishes to challenge the bidding specifications must do so within three business days prior to the date set for the opening of bids, and any such challenges filed thereafter are void. N.J.S.A. 40A:11-13(e).
Plaintiff argues that Daidone's letter of January 2, 2008 was a timely challenge to the bid specifications. In that letter, Daidone asked whether a substitution of materials and equipment must be made after the signing of the contract or at the time of bidding. Daidone asked how it was possible to get a letter of recommendation regarding the ASC/3 Econolite controller software since that product had only been introduced in August 2007. In addition, Daidone inquired as to why the control software had to be compatible with an Econolite ASC/3 controller if the specifications called for an Econolite ASC/2-210 controller. Daidone also stated, "[i]f a substitute controller is submitted that is equal to the ASC/2-210 controller, and approved, does the [c]ontrol [s]oftware sill have to be compatible with the Econolite ASC/3 controller?" The County responded to each of these inquiries on January 4, 2008.
The trial judge found that even giving Daidone's January 2, 2008 letter its "most liberal reading," Daidone was not challenging the specifications. In our view, the judge's finding is unassailable. There is no statement in Daidone's letter of January 2, 2008 which even remotely suggests that Daidone was challenging the bidding specifications.
Plaintiff additionally argues that Daidone's letter of January 9, 2008 represented a challenge to the bidding specifications. We note that plaintiff did not raise this contention in the trial court. Daidone's January 9, 2008 letter stated:
Please be advised that other New Jersey Department of Transportation approved traffic signal vendors are unable to provide pricing on the subject project due to their inability to obtain the technical performance requirements from the County. Please see the attached letter. At this time, only the Econolite Vendor, named in your specifications[,] can quote the job.
Daidone Electric, Inc. feels it would be in the best interest of the County to provide the technical performance requirements in order to create a competitive bidding process.
Attached to Daidone's letter was a January 9, 2008 letter from plaintiff, in which plaintiff stated that it would not be providing a price quotation for the traffic signal equipment on the project. In its letter, plaintiff additionally stated:
[w]e apologize for any inconvenience; however, after numerous attempts by [plaintiff] asking the County to provide the technical performance requirements that they have developed to determine what parameters will be used as the basis to determine what will constitute an "approved equal" for all items, they have failed to provide this information.
Like Daidone's January 2, 2008 letter, its letter of January 9, 2008 did not expressly state that Daidone was challenging the bidding specifications. Moreover, the letter was sent to the County one day prior to the opening of bids, which was *872 after the time required by N.J.S.A. 40A:11-13(e) for asserting a challenge to the bid specifications.
Because it failed to assert a challenge to the bidding specifications at least three days prior to the bid opening, Daidone was precluded by N.J.S.A. 40A:11-13(e) from raising a later challenge to the specifications. Therefore, the trial court correctly found that adding Daidone as a plaintiff in this case would be futile.
Plaintiff argues, however, that if Daidone is precluded by N.J.S.A. 40A:11-13(e) from asserting a challenge to the bid specifications, it should be permitted to contest the specifications based on its status as a taxpayer in Essex County.
We reject the contention that a bidder can do an "end-run" around the time limitations imposed by N.J.S.A. 40A:11-13(e) when the bidder happens to be a taxpayer in the relevant contracting unit. Were we to accept plaintiff's argument, the statute would be meaningless, at least as applied to bidders who also are taxpayers of the government entity that issued the specifications. A statute should not be construed in a manner that would lead to "absurd or unreasonable results." State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966). Accordingly, we reject plaintiff's argument that Daidone has standing as a taxpayer to challenge the bid specifications, notwithstanding its patent failure to comply with N.J.S.A. 40A:11-13(e).
Affirmed.
NOTES
[1] Plaintiff stated, by way of example, that the specifications called for Econolite's traffic controllers, video detection systems, and central traffic control software. The specifications also required the use of Pelco's mounting hardware, Clary's battery back-up, and either Safetran or APX's cabinets.