**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1079-20

IN THE MATTER OF ATLANTIC
RECYCLING GROUP'S BID
PROTEST OF AWARD FOR
NJDOT SNOW PLOWING AND
SPREADING WAIVER.

_____

Argued January 24, 2022 – Decided August 9, 2022

Before Judges Accurso and Rose.

On appeal from the New Jersey Department of Transportation.

David L. Disler argued the cause for appellant Atlantic Recycling Group (Porzio, Bromberg & Newman, PC, attorneys; David L. Disler, of counsel and on the briefs; Matthew J. Donohue, on the briefs).

Ryne A. Spengler, Deputy Attorney General, argued the cause for respondent State of New Jersey Department of Transportation (Matthew J. Platkin, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ryne A. Spengler, on the brief).

PER CURIAM

Atlantic Recycling Group appeals from a final decision of the Department of Transportation to bypass its low bid on the 2020-21 snow plowing and spreading waiver contract. In Atlantic's telling, the Department refused to award Atlantic the contract based on a false claim involving "an exaggeration of a prior contract," where Atlantic "had the audacity to appeal the NJDOT's meritless attempt to cancel all of [Atlantic's] contracts over a simple misunderstanding on a poorly written, brand-new question."

In actuality, the Department bypassed Atlantic's bid in accordance with a provision in the Request for Quotations advising all bidders their bids could be bypassed based on "a history of performance problems" demonstrated by "formal complaints and/or contract cancellations for cause" in accordance with the State's Standard Terms and Conditions. As the Department's decision to bypass Atlantic's bid was neither arbitrary nor capricious, complied with legislative policies and is amply supported by sufficient, competent and credible evidence in the record, we affirm.

The essential facts are essentially undisputed and easily summarized, starting with Atlantic's bid on the contract lines the Department cancelled for cause. In January 2018, the Division of Purchase and Property issued a bid solicitation on behalf of the Department for snow plowing and spreading

services.  The solicitation explained that bidders meeting minimum criteria for experience and equipment whose trucks were equipped with an onboard wetting system would receive preference in the evaluation process.  Atlantic bid the contract by submitting a quote for several spreading price lines, answering "yes" to the question on the vendor equipment form asking if the bidder was "able to provide onboard wetting."

When the Department learned after it had awarded Atlantic eight price lines that Atlantic's trucks were not equipped with onboard wetting equipment, it filed a formal complaint with the Division of Purchase and Property requesting all eight contracts be immediately terminated.  The Division subsequently advised Atlantic of its intent to terminate the blanket purchase order awarding it the eight spreading price lines.

Atlantic protested the Division's decision, arguing the issue over the onboard wetting equipment was based on a simple miscommunication. Atlantic contended the bid solicitation was "misleading as it relates to 'wetting,'" and because the solicitation "indicated that vendors would be bidding on 'services similar' to those provided in the prior contracts," Atlantic "assumed it would be providing the same services and using the same 'wetting' method" as in the past.  It also argued that the Department failed to inspect

3

Atlantic's trucks after the award of the contract, and thus failed to catch the issue before the winter season.

In a cogent and comprehensive, sixteen-page single-spaced final agency decision, the Division determined Atlantic "incorrectly interpreted" the bid solicitation and it was "disingenuous" of it to argue the bid specifications were unclear in light of a letter the Division sent to Atlantic during the bid evaluation process confirming Atlantic was providing trucks "equipped with a wetting system" for the prices quoted, which Atlantic confirmed was accurate the same day.[1] Finding it undisputed that Atlantic did not have an onboard wetting system when it submitted its bid "despite so indicating in its quote for all of the eight (8) spreading price lines it was awarded," the Division rejected Atlantic's argument that its purchase and installation of the onboard wetting systems after bid opening "should be permissible."

Specifically, the Division explained that allowing Atlantic "to obtain and install onboard wetting systems after all bids have been opened 'would

_____

[1] The Division also cited an email Atlantic's principal sent to the Department after the award in response to the Department seeking to confirm that none of Atlantic's trucks had onboard wetting capabilities despite the representation to the contrary in its bid. Atlantic's principal confirmed the company did "not have onboard wetting at this time," and noted he "was puzzled to see the onboard wetting because [he] thought we bid without onboard wetting."

4

adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.'" See Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 315 (1994). Because the requirement for onboard wetting was a material term of the solicitation, allowing Atlantic to install the equipment on its trucks after bid opening "would permit 'post-bid . . . manipulation'" which our courts have declared unlawful. See Suburban Disposal Inc. v. Twp. of Fairfield, 383 NJ. Super. 484, 494 (App. Div. 2006).

The Division, however, did not order the cancellation of all eight of Atlantic's contracts. Reviewing the record, the Division determined Atlantic was given preference over other bidders in only four of the price lines. It accordingly cancelled Atlantic's contracts on those lines and directed they be awarded to the next qualified bidder. On the other four lines, other bidders either "expressed disinterest in serving the price line" or were without the requisite number of trucks to serve them. Because the Division determined Atlantic would have been awarded the contracts on those four lines notwithstanding its misrepresentation of its trucks having onboard wetting capability in its bid, the Division decided Atlantic's contracts on those lines did not require cancellation. Atlantic did not appeal that decision.

In August 2020, following approval from the Division to obtain snow plowing and spreading services by means of a waivered procurement pursuant to N.J.S.A. 52:34-9(e) and N.J.A.C. 17:12-1A.2(c), the Department issued a Request for Quotes, specifying in section 4.1.8 that "[a] bidder with a history of performance problems as demonstrated by formal complaints and/or contract cancellations for cause pursuant to the State of NJ Standard Terms and Conditions accompanying this RFQ may be bypassed for an award issued as a result of this RFQ." None of the bidders, including Atlantic, questioned the bypass provision during the time allotted for questions about the bid specifications.

After the bid opening, the Department reviewed the Division's vendor performance records and determined to bypass Atlantic under section 4.1.8 based on the 2018 formal complaint resolved against Atlantic under the prior contract for similar services. After learning it had not been awarded the contract on the three price lines for which it had submitted the low bid, and that its bids had been bypassed, Atlantic's lawyer wrote to the Commissioner of Transportation, suggesting the Department was apparently unaware of the Division's ultimate decision on the Department's 2018 complaint, which contained "no allegations of prior poor performance" and "ultimately

A-1079-20

determined that it was 'in the State's best interest' to award [Atlantic] four contracts."

In a lengthy letter that essentially re-litigated the Department's 2018 complaint, Atlantic's counsel asserted the prior contracts were not terminated for poor performance and "[t]here is no question from the remedy established in the Decision" that Atlantic didn't "seek to intentionally provide misleading or false information" in its bid. Instead, counsel asserted, "there was unclear language on a bid form that [Atlantic] answered based on its literal meaning." Conceding the Division "sided with the [Department's] interpretation" of the bid specifications, counsel maintained "it rejected the [Department's] termination of the four contracts in which [Atlantic] was the lowest bidder because it was in the 'State's best interest,'" and "[t]he same result must carry forward to the present bid."

Atlantic's counsel concluded by asserting the Department had failed to provide any analysis under N.J.A.C. 17:12-2.8 or N.J.A.C. 17:12-4.2 which provide that "a bidder only may be bypassed upon considering the 'frequency and seriousness of the bidder's poor performance' and only where there are 'repeated or excessive breaches' of the contract." Counsel argued that "[a]t worst," Atlantic "made a mistake in answering one unclear question on an

equipment form. It goes without saying that making such a mistake fails to meet the high standard set forth in N.J.A.C. 17:12-2.8 or N.J.A.C. 17:12-4.2."

The Department considered Atlantic's arguments and issued a final agency decision on November 10, 2020, rejecting Atlantic's challenge to the awards. After a comprehensive procedural history of the procurement and a short discussion of the principles underlying New Jersey's public bidding laws, the Department began its analysis by noting Atlantic's reliance on N.J.A.C. 17:12-2.8 and N.J.A.C. 17:12-4.2 was misplaced, as those regulations apply only to advertised procurements through the Division of Purchase and Property, not waivered procurements such as this one. The controlling regulation here, N.J.A.C. 17:12-1A.2, requires only that the Department provide "written justification for any bypass of a low bidder" as part of its Request for Waiver of Advertising packet to the Treasurer, which was done.[2]

The Department emphasized this contract was awarded under the standard set forth in section 4.1.8 of the RFQ to "the responsible bidder(s) whose proposal(s), conforming to the RFQ is/are most advantageous to the State, price and other factors considered." Further, "under the plain terms of

_____

[2] Atlantic's counsel conceded at oral argument that neither N.J.A.C. 17:12-2.8 nor N.J.A.C. 17:12-4.2 applies here and that N.J.A.C. 17:12-1A.2 controls.

the RFQ," section 4.1.8, the Department "expressly reserved the right to bypass any bidder who either:  1) had a formal complaint filed against it; or 2) had a prior contract cancelled for cause," and it was undisputed Atlantic "had both" a formal complaint previously filed against it and had lost four contracts for cause.  The Department noted Atlantic did not question or challenge the section 4.1.8 bypass provision in the specifications prior to submitting its bid.

The Department concluded that given "the critical nature of the subject services and the significant public safety risks associated with a vendor's failure to provide the proper equipment necessary to ensure the State's roadways remain open and passable during the winter months," "it was not in the State's best interest" to award these contracts to Atlantic in light of the 2018 formal complaint and resulting cancellation of four contracts for similar services.  It thus upheld the decision to bypass Atlantic's bids and declined to overturn the contract awards.  This appeal followed.

Atlantic asks us to reverse the Department's decision, arguing the agency's rationale for bypassing it in 2020 "completely mischaracterizes the events surrounding the prior contract dispute, misapplies the legislative intent of the bidding laws, and disregards the factual findings and legal conclusions contained in" the Division's September 2019 decision.  Atlantic further submits

the Department's decision "not only violates the express public policy behind the bidding laws and lacks the requisite factual support but is so manifestly mistaken that [this court] should abandon all traditional deference associated with the agency's decision." Atlantic contends the remedy established in the September 2019 decision indicates it "did not seek to intentionally provide misleading or false information, otherwise poorly perform a contract, or have a contract cancelled for cause."

Atlantic complains it "has been forever barred" based on the 2018 formal complaint "despite a final agency decision that overturned the formal complaint, found there was no evidence of poor performance, and concluded it was in the 'State's best interest' that [Atlantic] continue to perform work for the [Department] where it is the lowest bidder." Atlantic contends the Department's bypass clause in the RFQ "fosters the favoritism and improvidence the bidding laws and regulations seek to defend against" as "it allows anyone, including [Department] employees, to file a complaint against vendors to have them removed from future consideration in order to force the State to use these employees' favored vendors." Atlantic contends the "never-ending limbo" the Department has allegedly placed it in is "the very definition of 'wrongness' that permits this court to correct the [Department's] mistakes

10

without assigning any deference to [its] conclusions" in accordance with <u>State v. Johnson</u>, 42 N.J. 146, 162 (1964).

Our review of the record convinces us that none of Atlantic's arguments is of sufficient merit to warrant any extended discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

The law is well settled that we may not overturn a governmental entity's decision to accept or reject a bid absent a gross abuse of discretion. <u>Barrick v. State</u>, 218 N.J. 247, 258 (2014). Applying that standard here, Atlantic has provided us no basis on which we could overturn the Department's well-considered decision to bypass its bids on this waivered procurement.

As our Supreme Court regularly reminds, public bidding exists to advance the public interest, not to protect the interests of individual bidders. <u>Meadowbrook</u>, 138 N.J. at 313. The policy underpinning our competitive bidding statutes is to assure against favoritism, improvidence, extravagance, and corruption in the bidding process. <u>Barrick,</u> 218 N.J. at 258-59. Officials in charge of procuring services for the State under New Jersey's public bidding laws are charged to select the vendor whose offer will be most advantageous to the State, price and other factors considered. <u>Keyes Martin & Co. v. Dir., Div. of Purchase & Prop.</u>, 99 N.J. 244, 253 (1985).

Despite Atlantic's efforts to spin the Director of the Division of Purchase and Property's decision on the Department's 2018 complaint, there can be no question but that four of Atlantic's previous contracts with the Department were terminated for cause. The Director rejected as "disingenuous" the arguments Atlantic reprises here that its misstatement about its trucks being equipped with an onboard wetting system was caused by the Department's "unclear question on an equipment form." That might have been a colorable argument had Atlantic not confirmed in writing to the Department that the trucks it was proposing to provide were "equipped with a wetting system" and its principal's statement after the misstatement came to light that he thought Atlantic "bid without onboard wetting."

The reason Atlantic was allowed to keep four of the eight contracts was not, as Atlantic now alleges, that the Director found it "did not seek to intentionally provide misleading or false information, otherwise poorly perform a contract, or have a contract cancelled for cause." The Director allowed Atlantic to keep the four contracts, as he clearly explained, only because Atlantic did not gain a competitive advantage from its misstatement on those contract lines.

12

The Department's decision — that Atlantic's history of a formal complaint and cancelled contracts on an earlier bid for similar services was good cause to bypass Atlantic Recycling's bid on this procurement — was reasonable and supported by evidence in the record and certainly not the result of "bad faith, corruption, fraud or gross abuse of discretion" as would allow us to overturn it.[3] See Commercial Cleaning Corp. v. Sullivan, 47 N.J. 539, 549 (1966).

Finally, we need not address Atlantic's new claim that Section 4.1.8 of the RFQ allows the Department to "circumvent the public bidding laws and regulations—and advance the favoritism and improvidence those very laws were enacted to counteract—via an internal complaint simply being initiated," no matter how frivolous. Leaving aside that Atlantic's bid was bypassed because four of its prior contracts were terminated by the Director of the Division of Purchase and Property for cause, not because the specification "allows anyone, including NJDOT employees, to file a frivolous complaint

---

[3] Although the Department now cites to other instances of poor conduct by Atlantic — including showing up late to call-outs or arriving on-site without requisite equipment or enough trucks — we assign these claims no weight. At the time the Department bypassed Atlantic's bid, it did not rely on those alleged performance problems, nor did it need to. Atlantic's history of cancelled contracts for similar services was sufficient basis for its decision without these additional alleged acts of misconduct.

13

against vendors to have them removed from future consideration in order to force the State to use these employees' favored vendors," its challenge to the specification comes too late. See JEN Elec., Inc. v. Cnty. of Essex, 401 N.J. Super. 203, 213 (App. Div. 2008) (noting "New Jersey Courts will not entertain a challenge by a bidder to bidding specifications after bids have been opened"), rev'd on other grounds, 197 N.J. 627 (2009). "[A] party is estopped from challenging the award of a contract which it actively sought through the procedure it now attacks." Autotote Ltd. v. New Jersey Sports and Exposition Auth., 85 N.J. 363, 369 (1981).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-1079-20