RICHARDSON ENGINEERING CO., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. RUTGERS, THE STATE UNIVERSITY, A BODY CORPORATE AND POLITIC OF NEW JERSEY, AND EDWIN J. DOBSON, JR., INC., A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

JOHN G. CHRISTIAN AND HELEN L. CHRISTIAN, HIS WIFE, PLAINTIFFS-APPELLANTS, v. RUTGERS, THE STATE UNIVERSITY, A BODY CORPORATE AND POLITIC OF NEW JERSEY, AND EDWIN J. DOBSON, JR., INC., A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued November 6, 1967—Decided February 19, 1968.

*Mr. Frederick F. Richardson* argued the cause for plaintiffs-appellants.

*Mr. Clyde A. Szuch* argued the cause for defendant-respondent Rutgers, The State University (*Messrs. Clyde A. Szuch, Joel A. Wolff* and *Thomas E. Colleton, Jr.,* on the brief; *Messrs. Pitney, Hardin & Kipp,* attorneys).

*Mr. Ronald L. Horan* argued the cause for defendant-respondent Edwin J. Dobson, Jr., Inc. (*Mr. Ronald L. Horan,* on the brief; *Messrs. Applegate, LaMura* and *Horan,* attorneys).

The opinion of the court was delivered by

PER CURIAM. This case involves an attack upon the validity of the award by Rutgers, The State University, of a contract to the defendant Edwin J. Dobson, Jr., Inc. for part of the work involved in the construction of a medical school building. The trial court sustained the award, and we certified the ensuing appeal before it was argued in the Appellate Division.

Early in 1962, Rutgers, The State University, decided to construct a new medical school building. Plans were drawn, and in June 1962 bids for the work were solicited publicly. Litigation followed receipt of the bids. It became moot, however, because the total of the lowest bids exceeded the budget for the project, and therefore no contracts were awarded. Instead all bids were rejected, and it was decided to redesign the project and readvertise for bids.

Rutgers readvertised in September 1966. Bids were sought in seven separate categories of work: (1) general construction; (2) structural steel; (3) plumbing and fire protection; (4) heating, ventilating and air conditioning; (5) electrical; (6) laboratory furniture; and (7) independent inspection and testing. The public notice advised contractors that instructions to bidders, bid forms, contract forms, plans and specifications were available at a designated place.

The notice and the instructions to bidders specified that each bidder should be qualified with the Bureau of Construction, Division of Purchase and Property, Department of the Treasury, State of New Jersey, pursuant to *N. J. S. A.* 52:35-1 *et seq.* Both documents said also that Rutgers reserved the right to waive any informalities in or to reject any and all bids.

Section 2 of that statute provides:

"Officials of the state shall require of all persons proposing to submit bids on public work to be furnished for or on behalf of the state or any officer, board, commission, committee, department or other branch of the state government, a statement under oath in response to a questionnaire, standardized for like classes of work, to be submitted to such persons by such state official. The statement shall develop fully the financial ability, adequacy of plant and equipment, organization and prior experience of the prospective bidder, and also such other pertinent and material facts as may seem desirable." *N. J. S. A.* 52:35-2.

Section 3 says:

"The state officials shall classify all such prospective bidders as to the character and amount of public work on which they shall be qualified to submit bids, and bids shall be accepted only from persons qualified in accordance with such classification. * * *" *N. J. S. A.* 52:35-3.

In due course bids were received on all phases of the work. They were opened on October 5, 1966, and the low bidder ascertained in each of the seven categories listed above. Defendant Dobson's bid of $998,413 was the lowest bid in the plumbing and fire protection category. It was $88,308 lower than that of plaintiff Richardson Engineering Co., the next lowest bidder. On October 31, 1966, Rutgers signed contracts with the several successful bidders, and on the same day gave each of them written notice to proceed with the work. Construction began in early November 1966.

Upon the opening of the bids on October 5, Richardson Engineering Co. objected to acceptance of the Dobson bid primarily because Dobson was not adequately prequalified

by the Department of the Treasury under *N. J. S. A.* 52:35–3. Admittedly, as of October 13, 1966 Dobson's prequalification was for $396,365. Thereafter, conferences were held by representatives of Rutgers, Richardson and Dobson. At these conferences Rutgers took the position that it was not an "officer, board, commission, committee, department or other branch of the state government" within the meaning of *N. J. S. A.* 52:35–2. Therefore, it was not obliged to require prequalification of bidders under that statute, and, as indicated in *A. C. Schultes & Sons v. Township of Haddon,* 8 *N. J.* 103 (1951), could disregard Dobson's lack of full qualification thereunder. Thus, so long as Dobson appeared to be responsible, financially and otherwise, Rutgers felt legally justified in awarding the contract to that company.

Since, accordingly to Rutgers' Vice-President and Treasurer, the specifications required each bidder to "present such evidence of the bidder's experience, management, organization, qualifications and financial ability, as will establish his capacity to carry out the terms of the contract," Rutgers' representatives investigated Dobson's financial capacity. Once satisfied that it was the lowest responsible bidder, and after receiving a proper performance and payment surety bond, Dobson was awarded the contract. Formal execution thereof took place on the same day as those of the other successful bidders, October 31, 1966.

The specifications called for completion of the project in 700 days from the date of execution of the contracts. The nature of the project was such that a great deal of the work of the various contractors (except that of the successful bidder for the laboratory furniture contract), had to be carried on in close sequence or even concurrently. The record makes it plain that on receiving notice to proceed, some of the contractors made the necessary preparations for their tasks, and some very quickly actually began their assigned tasks. In fact, evidence in affidavit form showed that within four weeks after November 12, 1966; the general contractor

had completed all the stripping and had started excavating for footings, foundation and basements. At that time, 40% of the buildings' excavation and 20% of the excavation for the site work had been completed. Thereafter, all phases of the construction continued, each complementing the other, that being the only feasible way to handle the project. When the present appeal was argued, the various contracts were in the following stages of completion:

General contractor ................... 26%
Defendant Dobson, plumbing ......... 34%
Electrical .......................... 17%
Heating, ventilating, etc. ............. 8%

Moreover, at that time over 53% of the 700 days allotted for completion of the project had elapsed.

After the objection to Dobson's bid was rejected and the various contracts awarded, Richardson waited almost four weeks before filing this action in lieu of prerogative writ. Then two suits were instituted, one by the Richardson company, as a rejected bidder, and the second by plaintiffs John G. Christian and Helen L. Christian, his wife, as residents and taxpayers of Piscataway Township, New Jersey, where the medical school is being built. John G. Christian is Assistant Secretary of the Richardson Construction Co. The Christians are represented by the Richardson company's counsel and the cases were consolidated for hearing. Rutgers, The State University, and Edwin J. Dobson, Jr., Inc. were named defendants. The other successful bidders who were awarded contracts were not joined as defendants.

The Richardson complaint demanded that it be declared the lowest responsible bidder for the plumbing and fire protection contract, that the award to Dobson be set aside as illegal and the contract awarded to Richardson. Compensatory and punitive damages were sought as well as an injunction restraining Dobson from proceeding with the work. The Christians' complaint asked the court to determine the legality of the award of the contract to Dobson and whether Rutgers is subject to the bidder prequalifica-

tion statutes, *N. J. S. A.* 52:35–1 *et seq.* and *N. J. S. A.* 18:11–9.1 *et seq.* Additionally, these plaintiffs demanded an injunction to "stay the further progress of any work" under the awarded contracts until determination of the action.

On the filing of the complaints, plaintiffs obtained an order to show cause why an injunction *pendente lite* should not be issued. Rutgers responded with a motion for summary judgment on the ground that the complaints failed to state a cause of action. Both motions were presented to the trial court on the same day.

The Rutgers' motion for summary judgment was predicated on the ground that the cited bidder prequalification statutes are not applicable to it. More particularly, Rutgers asserted that it is not a "board, commission, committee, department or other branch of the state government," and therefore is not required to receive bids only from bidders who prequalified under *N. J. S. A.* 52:35–3. It contended that by virtue of the "Rutgers, The State University Act of 1956," *L.* 1956, *c.* 61, *p.* 119, § 1, *N. J. S. A.* 18:22–15.25 *et seq.*, its status is that of an autonomous, quasi-public body, operating under a permanent bilateral contract between the State and its Board of Trustees, and therefore it is not such a public agency as is contemplated by *N. J. S. A.* 52:35–2. It claimed further that Rutgers is not subject to general statutes applicable to the state or public agencies unless their provisions are incorporated in the "compact" represented by the 1956 Act, or were consented to by the Board of Trustees thereafter. Since the Board was given power to "secure bids for the construction of buildings and for equipment" thereof, and to "make contracts" therefor, *L.* 1956, *c.* 61, *p.* 125, § 18, *N. J. S. A.* 18:22–15.42(6)(b), and no reference to *N. J. S. A.* 52:35–2 was included, no obligation exists to require prequalification of bidders. Consequently, it urged that even though prequalification had been requested in the notice and instruction to bidders in this instance, the request was purely voluntary

and could be waived in making the selection of the lowest responsible bidder. *Cf. A. C. Schultes & Sons v. Township of Haddon, supra; Schwartz & Nagle Tires, Inc. v. Board of Chosen Freeholders, County of Middlesex,* 6 *N. J. Super.* 79 *(App. Div.* 1949) ; *Peter's Garage, Inc. v. City of Burlington,* 121 *N. J. L.* 523, 528 *(Sup. Ct.* 1939) ; *Coward v. Mayor & Council of City of Bayonne,* 67 *N. J. L.* 470 *(Sup. Ct.* 1902) ; *City of Trenton v. Shaw,* 49 *N. J. L.* 638 *(E. & A.* 1887).

With respect to plaintiffs' claim that if *N. J. S. A.* 52 :35–2 and 3 did not apply then *N. J. S. A.* 18 :11–9.2 was controlling, Rutgers' position was that the latter statute specifically related to local boards of education or similar bodies operating under Title 18 of the Revised Statutes. *N. J. S. A.* 18 :11–9.2 *(L.* 1962, *c.* 105, § 2) provides that all persons proposing to bid on any contract with a board of education for public work shall first be classified by the State Board of Education as to the character and amount of public work on which they shall be qualified to submit bids. The University argued that it was not such a local board as is contemplated by this statute. It pointed to the statement of purpose, which indicated that the Act was designed "to require the classification of persons proposing to bid on any public work for the local boards of education." In addition it repeated the argument made as to *N. J. S. A.* 52 :35–2, *i. e.,* that Rutgers' unique contractual status with the State made *N. J. S. A.* 18 :11–9.2 inapplicable because it was not included in the compact.

█ At this point it should be noted that Rutgers did not impose any condition in the public advertisement, notice to bidders or specifications that bidders be prequalified under *N. J. S. A.* 18 :11–9.2. Even if such prequalification were mandatory thereunder (and here we express the view that *N. J. S. A.* 18 :11–9.2 is not applicable to Rutgers, 'The State University); the failure to require it would not itself justify vacating the award to Dobson and granting the contract to the Richardson company. *Poling v. Roman,* 86 *N. J. Super.*

484, 488 (*Law Div.* 1965); *Armitage v. Mayor & Common Council of City of Newark,* 86 *N. J. L.* 5 (*Sup. Ct.* 1914). *Cf. Critchfield v. Jersey City,* 4 *N. J. Misc.* 299 (*Sup. Ct.* 1926); *Atlantic Gas & Water Co. v. Atlantic City,* 73 *N. J. L.* 360, 361 (*Sup. Ct.* 1906).

The trial court agreed with Rutgers' position. It therefore refused the interim restraint and entered summary judgment for defendants. Its opinion declared that the State University Act of 1956 "is more than a statute under the unilateral control of the Legislature. It is a bilateral contract between the State and the Board of Trustees, embodying a full and complete statement of the terms and conditions upon which the funds held by the Trustees are to be submitted to increased public control." It said also: "Accordingly, by virtue of the self-containing nature of the compact, all provisions pertaining to the operation and control of Rutgers intended by the State and the Board of Trustees to be applicable to it are expressly stated therein. Therefore provisions not contained in the Act do not apply to Rutgers. To the extent that the Legislature can unilaterally modify the compact, if at all, it can only do so by legislation which names Rutgers or unmistakably describes it. * * *" Consequently the court held that since the bidder prequalification statute, *N. J. S. A.* 52:35–1 *et seq.,* is not incorporated in the 1956 compact between the State and Rutgers, either expressly or by reference, Rutgers is not subject to it.

■ It is not our purpose, nor is it necessary in view of the result we have reached, to discuss or to decide the legal nature of the relationship between Rutgers and the State under the 1956 Act. This course is particularly advisable here for the reason that there is no one in the case speaking for the State. Reference has been made to portions of the trial court's opinion in order to note our specific reservation of the question until an appropriate context calls for the expression of a definitive view as to the impact of the 1956 enactment on Rutgers' status vis-a-vis the State.

In its complaint Richardson seeks a determination that the award of the plumbing and fire protection contract to Dobson was illegal, and a judgment directing award of the contract to it. It sues as an unsuccessful bidder, its bid being $88,308 higher than Dobson's. Under all the circumstances in the case, including Rutgers' reservation of the right to reject any and all bids, we see no basis upon which Richardson could compel award of the contract to it. *Camden Plaza Parking, Inc. v. City of Camden*, 16 *N. J.* 150, 158 (1954); *Waszen v. City of Atlantic City*, 1 *N. J.* 272 (1949); *William A. Carey & Co. v. Borough of Fair Lawn*, 37 *N. J. Super.* 159, 168 (*App. Div.* 1955); *Shore Gas & Oil Co. v. Borough of Spring Lake*, 27 *N. J. Super.* 33, 37 (*App. Div.* 1953); *Schwartz & Nagle Tires, Inc. v. Board of Chosen Freeholders, County of Middlesex, supra; Frank P. Farrell, Inc. v. Board of Education of Newark*, 137 *N. J. L.* 408 (*Sup. Ct.* 1948); *Jersey Central Power & Light Co. v. Borough of Spring Lake*, 6 *N. J. Misc.* 253, 256 (*Sup. Ct.* 1928); *Critchfield v. Jersey City, supra; Atlantic Gas & Water Co. v. Atlantic City, supra; McGovern v. Inhabitants of City of Trenton*, 60 *N. J. L.* 402 (*Sup. Ct.* 1897); *Bartley, Incorporated v. Town of Westlake*, 237 *La.* 413, 111 *So. 2d* 328 (1959). See also *Scatuorchio v. Jersey City Incinerator Authority*, 14 *N. J.* 72, 91 (1953).

For additional reasons to be discussed, which are applicable to Richardson as well as to the plaintiffs-Christian, the trial court's judgment must be affirmed even though predicated upon different grounds.

The record reveals that the bids for this project were opened on October 5, 1966. A representative of the Richardson company was present at that time, and when it appeared that Dobson was the lowest bidder for the plumbing and fire protection portion of the work, he objected to an award to Dobson on various grounds, including the alleged violation of *N. J. S. A.* 52:35-1 *et seq.* On October 6, the President of Richardson reiterated the objections in letter form to the Vice-President and Treasurer of Rutgers, and

asked for a hearing thereon. A meeting was held on October 14 and was attended by representatives of both parties and their attorneys. At that meeting, Richardson's criticism of the Dobson bid was explored. It was told that its objections were not valid and that a recommendation would be made to the Board of Governors that the contract be given to Dobson. On October 21, the Rutgers' Board of Governors met and awarded the contracts for the various phases of the work to the seven lowest bidders, including Dobson. There is no reason to doubt that the Richardson company had been following the matter closely and was soon aware of the awards. No immediate court action was taken, however, to challenge the award or to stay the execution of the contracts or to prevent the beginning of the actual construction work. Ten days after the awards were made, Richardson again wrote Rutgers, specifically referring to the October 21 awards, asking for a hearing and threatening a Federal court suit if it was refused. The same day, October 31, formal contracts were executed with all the contractors and notices to proceed with the work as of that date were given. On November 2, Richardson was notified that its request for a hearing was refused.

As has been indicated above, preparations for and activities under the contracts awarded for the various parts of the project (except for the laboratory furniture contract) required interdependent and, in large measure, concurrent operations by the several contractors. The specifications, which were familiar to all parties involved, made plain the necessity of a common, integrated effort as the work progressed. Correspondence of the Richardson company, which was attached to its complaint, reveals that it knew that Dobson would have to prepare for the plumbing job and begin work at the project location very soon.

Despite plaintiffs' awareness of the nature of the operation, and the fact that several contractors in addition to Dobson were involved, these suits were not brought until November 18, 1966. This was 34 days after the conference at which

Richardson was told by the Rutgers representatives that the objections were not valid and that it would be recommended that the Board of Governors award the contract to Dobson; it was also 27 days after the contract was actually awarded to Dobson, and 18 days after execution of the contracts by Dobson and the other successful bidders. Further, and even more critical under the circumstances, plaintiffs named only Rutgers and Dobson as defendants. The other contractors were not joined. By the time the application for the *pendente lite* injunction was argued, the construction work had been in progress almost five weeks and Dobson had made substantial preparations for installation of subsurface pipes, which was to be done at a very early stage of the general contractor's work. In this connection, the affidavit of the plaintiffs—Christian, submitted on the injunction motion, said the first step toward the overall relief sought was "to stop all further expenditure of money *under the October 21, 1966 awards* on the Medical School, so that waste of public funds will be forthwith halted * * *." (Emphasis added.) Also, their complaint asked the court "to stay the further progress of any work under these *awards*" until "the legality of the Oct. 21st Dobson award * * * and the legality of the specifications and procedure relating thereto" are determined. (Emphasis added.) Thus, despite the reference to an injunction as to all of the contracts awarded, and despite plaintiffs' knowledge that the construction work was in progress, they limited their suit to Rutgers and Dobson and failed to join the other interested contractors.

When the preliminary restraint was denied, the integrated endeavors of all contractors continued and the substantial percentages of completion of the various phases of the project, and particularly that of Dobson, had been reached prior to oral argument of this appeal. In the intervening three months since argument, obviously further advances have been made in the areas mentioned as well as under the other contracts, such as structural steel, which were not referred to at the argument. It follows also · that large

amounts of Rutgers' public and private funds, as well as funds of the contractors, including Dobson, have been expended thus far. In view of the fact that the construction and expenditure of funds have reached this level, plaintiffs' assault upon the award to Dobson cannot be sustained.

When a party seeks review of the award of construction contracts for projects of the type involved here, the attack must be made with the "utmost promptitude." *Bullwinkel v. City of East Orange,* 4 *N. J. Misc.* 593 *(Sup. Ct.* 1926). Whenever public money is to be expended or if the successful bidder has made substantial preparations for the work, incurred considerable expenses and obligated himself still further in undertaking to carry out the contract, ordinarily, review of the award will be denied unless sought promptly. *Gunne v. Borough of Glen Ridge,* 11 *N. J. Misc.* 3 *(Sup. Ct.* 1932) ; *Brown v. Atlantic City,* 5 *N. J. Misc.* 397 *(Sup. Ct.* 1927) ; *Read v. Atlantic City,* 49 *N. J. L.* 558, 562 *(Sup. Ct.* 1887). Of equal importance with this is the requirement that all parties who might be adversely affected by the action, or parties whose presence is necessary to make any judgment properly effective, must be joined as defendants. This general rule is particularly pertinent here because the Christians' complaint charged that a number of the contracts for the project, including the one to Dobson, were illegally awarded because of "improper specifications and improper discrimination against certain bidders," and because some of the contractors receiving contracts were not prequalified bidders under *N. J. S. A.* 52:35–1 *et seq.* Further, the complaint alleged that in order to protect the public moneys and the public interests involved, work on the project should not be allowed to go forward until "the legality of these October 21, 1966 awards" is determined. Yet none of the contractors other than Dobson was joined as a defendant. *Cf. Cunningham v. Borough of Merchantville,* 61 *N. J. L.* 466 *(Sup. Ct.* 1898). And this in spite of the plain fact that the construction work

called for a substantially coordinated effort by the contractors.

If the suit had been brought after the fruitless conference between the representatives of Rutgers and the Richardson company and their attorneys and before the October 21, 1966 award of the contracts, or after the award and before October 31, the date of the formal execution of the contracts, or even immediately thereafter, the situation would have been different. The various issues raised by plaintiffs could have been resolved before expenditure of public funds, as well as private funds of Dobson and the other contractors, and before any more than a minimal work effort had been made.

We find no evidence in the record indicating that Rutgers did not act in good faith in awarding the contracts to Dobson and the other successful bidders. In view of the circumstances detailed above, especially the fact that at this late date substantial public funds have already been expended in good faith, and the fact that the work of all the various contractors is well along, we see no justification in law or equity for the maintenance of this action or review of the specific issues decided below. Therefore the judgment below is modified and the cause is remanded to the Law Division for entry of a judgment dismissing the plaintiffs' complaints.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.