964 A.2d 790

JEN ELECTRIC, INC., PLAINTIFF–APPELLANT, v. COUNTY
OF ESSEX, DEFENDANT–RESPONDENT.

Argued September 23, 2008—Decided March 4, 2009.

628

*Suzanne M. Cerra* argued the cause for appellant (*Nukk–Freeman & Cerra*, attorneys; Ms. *Cerra, Robin H. Rome and Kristine V. Ryan*, on the briefs).

*Mitchell W. Taraschi* argued the cause for respondent (*Connell Foley*, attorneys; Mr. *Taraschi and Mark L. Fleder*, of counsel).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal arises in the context of a bid specification challenge, a subset of public contracting. The primary issue presented is whether the provisions of the 2000 amendment to *N.J.S.A.* 40A:11–13 limit the standing of those who wish to challenge a bid specification in a public contract, or whether those provisions represent a limitations period within which such a challenge by an identified party—a "prospective bidder"—must perfect that challenge. The trial court determined that *N.J.S.A.* 40A:11–13 sets forth the standing requirements for those who wish to challenge a bid specification in a public contract, and that only "prospective bidders" are allowed to advance such a challenge. Importing concepts relevant to contract award challenges, the Appellate

Division held that only bidders, prospective bidders and taxpayers could challenge a bid specification.

In light of the unique nature of public contracting and the traditional role the common law has retained in determining standing to contest governmental action, we arrive at a different result. We conclude that the 2000 amendment to *N.J.S.A.* 40A:11–13 is intended as a statute of limitations, requiring, in its plain language, that "[a]ny prospective bidder who wishes to challenge a bid specification shall file such challenges in writing with the contracting agent no less than three business days prior to the opening of the bids[,]" on pain that "[c]hallenges filed after that time shall be considered void and having no impact on the contracting unit or the award of a contract." We therefore find nothing in the 2000 amendment to *N.J.S.A.* 40A:11–13 that limits, restricts or otherwise substitutes for traditional notions of standing in this context. Applying those traditional notions of standing, we further conclude that, in the circumstances presented, the plaintiff in this action had standing to challenge the bid specifications issued by the governmental contracting entity.

## I.

During 2007, defendant the County of Essex, through its Department of Public Works, planned certain infrastructure improvements along Central Avenue in Newark costing a total of approximately six million dollars. A significant part of these improvements consisted of the purchase and installation of new or replacement traffic signal and video detection systems that would establish a closed-loop operating system with central control monitoring; those systems were to be installed at ten separate locations on Central Avenue. As a result, in October 2007, the County issued specifications and bid documents in respect of the proposed traffic signal operations and roadway improvements on Central Avenue. However, by a letter dated October 23, 2007, plaintiff Jen Electric, Inc., a registered public works contractor that supplies, installs and maintains the "Peek Traffic Control"

system manufactured by Quixote Corporation, objected to those specifications, claiming that the traffic control equipment listed in the specifications identified a specific manufacturer—Econolite—to the exclusion of the manufacturer plaintiff represented, and were distributed exclusively by a single vendor—Signal Control Products—other than plaintiff. Plaintiff, therefore, requested that the County amend the specifications to allow for bids that included equal but alternate traffic control systems.

In response, the County issued addenda to the specifications which allowed for bids using equal, alternate products in lieu of the brands specifically listed in the specifications. The first addendum issued by the County required that any proposed equal, alternate products be pre-qualified, a requirement that also drew a sharp objection from plaintiff. In response, the County issued a revised addendum, removing the requirement of pre-qualification for equal, alternative products. In the main, however, those efforts were for naught: the County ultimately rejected all of the bids received.[1]

In December 2007, the County issued revised specifications and re-bid the project, with bids due by no later than January 10, 2008. In respect of the availability of equal, alternate products, the revised specifications were more restrictive than the original, modified specifications: while the original specifications listed specific manufacturers for the controllers and video detection equipment—a limitation lifted by the addenda later issued by the County—the revised specifications added the ITS cabinet enclosures, the battery back-up systems, the signal mounting hardware, and the central control software to the list of portions of the project that could be satisfied solely by a single source, that is the

---

[1] The record on appeal does not include a copy of plaintiff's October 23, 2007 letter to the County or, for that matter, any extrinsic evidence of the transactions between plaintiff and the County up to the re-bid of the project in mid-December 2007. However, plaintiff's complaint in lieu of prerogative writs makes specific allegations in respect of those events and the County's answer admits those allegations. It is on those admissions that we rely.

manufacturers identified in the specifications proper. Needless to say, these restrictions also drew a pointed objection from plaintiff. By a letter dated December 21, 2007, plaintiff advised the County's purchasing agent that plaintiff's

> initial objection to the form and content of the [project] specifications remains unchanged, in that all of the items specified are for a specific manufacturer (Econolite), with no approved equal provision. There is only one vendor in the State authorized to supply the necessary traffic signal equipment to the successful low bid Contractor. As a supplier of a competing brand that can meet or exceed the specific brand listed, we feel this unfair practice is in direct violation of the public bid process.
>
> Therefore, we once again respectfully request that the bid be postponed until the specifications can be reviewed and amended.

The County responded promptly. By a letter dated December 24, 2007, just three days later, the County noted that it *"ALWAYS* accepts an equivalent to any brand name stated in an advertised bid specification[,]" noting that any "equivalent must meet or exceed the specification of the brand stated in the bid and it is the responsibility of the bidder to prove that the equivalent meets or exceeds specification." The County cautioned plaintiff that, for those reasons, "this bid specification need[ ] not ... be amended and the bid opening date will not be postponed." Consistent with that explanation, the County issued the following formal confirming clarification dated December 26, 2007, two days later:

### CLARIFICATION NO. 1

1. The bid specification should read Econolite or equal (equivalent) in all sections of the specification. As stated in the [bidding documents] and [*N.J.S.A.*] 40A:11–13(d), [t]he County *ALWAYS* accepts equivalents to any brand name specified in a bid specification, however the equivalent must meet or exceed the bid specification and the bidder must prove that the equivalent meets or exceeds specification.

That clarification triggered an immediate, lengthy objection from plaintiff. By a letter dated December 27, 2007, plaintiff stated its position clearly: "it is apparent that [the bid specifications] have been re-written in a manner that clearly favors a particular sole source vendor to supply all of the traffic signal equipment (Econolite) namely, Signal Control Products, in spite of the fact that generic specifications exist." Plaintiff asserted that

"this re-bid, as in the case of the original bid, is in clear violation of Local Public Contracts Bidding Laws." After listing the several respects in which plaintiff contended the specifications were deficient, plaintiff noted at length as follows:

Numerous past attempts by [plaintiff] and other vendors to provide equivalent brands to Econolite for the County's projects have been repeatedly rejected. This in spite of the fact that the equivalent brands have been approved and accepted for use by the Federal Highway Administration, NJDOT [the New Jersey Department of Transportation] and CalTrans [the California Department of Transportation] and have been used successfully on countless Municipal, State and Federal projects in the State. However, we have been told point blank by the County's engineering staff that they will not accept any products other than Econolite's and to "not make any waves." This stance has been taken in spite of the fact that open and competitive bidding results in lower equipment pricing that benefits the County, since it is spending less public funds on its projects, thereby saving taxpayer dollars. This fact has been presented to the County in the past. Yet, the County's intent on wanting to use a sole source vendor cannot be misconstrued, nor can the specter of impropriety be ignored.

It can be demonstrated that on other public agency projects where a generic specification is provided, equipment pricing for traffic signals given by suppliers to Contractors *is significantly lower than pricing given to Essex County for the same equipment.* Yet, the County directed its design consultant to specify only Econolite products for this project, which is clearly not in the best interest of the public. The reason for this direction remains unclear.

To further illustrate the fact that Essex County is overpaying for its traffic signal equipment, consider that the total traffic signal equipment package cost given to Contractors from us and another competing supplier was approximately [six hundred fifty thousand dollars] lower than Signal Control Product's. However, we were told by the bidders that they used Signal Control Product's pricing despite the fact that addendums were issued indicating an "or equal" clause, because their past experience demonstrates that the County has never accepted any product other than Econolite's. And to reiterate our point, addendums to provide for an "or equal" clause would have been unnecessary, if the County had initially followed [the procedure outlined in state governmental procurement regulations] for the form and content of the bid specifications when preparing the project.

Based on the foregoing and the fact that there is approximately [six million two hundred thousand dollars] in funding at stake, we are sure you will agree that the project specifications need to be revised to a generic format in order to provide a fair and open bidding process. Doing so will be in all of the parties' best interest and will remove any questions as to whether or not favoritism or impropriety is present. In the event the bid is not postponed, we will have [n]o choice but to seek legal recourse.

The County again replied promptly. By a letter dated January 3, 2008, it noted that "[a]fter careful consideration [it] reaffirm[ed]

that the bid specifications ... are in full compliance with [the] New Jersey Public Contracts Law and applicable federal and state laws and regulations." It cautioned that "the bid opening time and date will not be extended and the ... project bid will still open on January 10, 2008 at 11:00 a.m." Summing up, the County re-emphasized its earlier advice: "As conveyed in the County's clarification # 1 dated December 26, 2007, [t]he County *ALWAYS* accepts equals (equivalents) to any *BRAND NAME* specified in the bid specifications. It is our understanding that equivalents to Econolite Brand Products in the specification are commercially available." That same day, plaintiff replied to that letter, purportedly asserting that the revised specifications nevertheless violated the requirements of the public bidding laws and that those specifications should be rescinded. According to plaintiff, the County never replied to plaintiff's January 3, 2008 letter.[2]

On January 8, 2008—two days before the bids were to be opened and claiming that "[b]ased on the requirements set forth in the Revised Specifications (even as amended by the subsequent Clarification), [Signal Control Products] is the *only* vendor in the State of New Jersey ... capable of supplying the designated traffic signal equipment and video detection system to the low bid Contractor"—plaintiff filed its complaint in lieu of prerogative writs against the County. In that complaint, plaintiff attacked the County's bid specifications on two separate fronts. Plaintiff first claimed that the County's use of a brand name—Econolite—in its specifications without first considering the use of a generic specification violated Section 13(d) of the Local Public Contract Law, *N.J.S.A.* 40A:11–13(d), and the relevant implementing regulations,

---

2 Plaintiff's January 3, 2008 letter to the County also is absent from the record on appeal. Although plaintiff alleged the details of the issuance and contents of that letter in its complaint-and that no reply was tendered thereto-the County simply admitted that the letter had been sent and that it spoke for itself; in denying the remaining allegations of that paragraph in plaintiff's complaint, the County generally denied the allegation that it had not responded to plaintiff's January 3, 2008 letter. Whether the County did or did not answer that letter is, in the context of this appeal, of little relevance and less materiality.

*N.J.A.C.* 5:34–9.2. In general, Section 13 provides that "[a]ny specifications for the provision or performance of goods or services under this act shall be drafted in a manner to encourage free, open and competitive bidding." *N.J.S.A.* 40A:11–13. More particularly, subsection (d) provides that

> no specifications under this act may:
>
> . . . .
>
> (d) Require, with regard to any contract, the furnishing of any "brand name," but may in all cases require "brand name or equivalent," except that if the goods or services to be provided or performed are proprietary, such goods or services may be purchased by stipulating the proprietary goods or services in the bid specification in any case in which the resolution authorizing the contract so indicates, and the special need for such proprietary goods or services is directly related to the performance, completion or undertaking of the purpose for which the contract is awarded[.]
>
> [*N.J.S.A.* 40A:11–13(d).]

Similarly, the regulations that implement those statutory provisions require that, "[t]o encourage free, open, and competitive bidding, prior to referencing a 'brand name or equivalent' in a bid specification . . . a contracting agent or purchasing agent shall first consider using a . . . generic specification available through a commercial or non-commercial service[.]" *N.J.A.C.* 5:34–9.2(a)(2).

Second, plaintiff asserted that the County's requirement that any equal or equivalent be pre-approved violated the clear injunction that "[u]nder no circumstance shall specifications require any form of 'pre-approval' or 'pre-qualification' of an equivalent product before the submission of bids." *N.J.A.C.* 5:34–9.2(d). For both reasons, plaintiff requested three forms of substantive injunctive relief: an order (1) declaring the bidding specifications null and void; (2) commanding that the County issue an addendum to the bidding specifications that would bring the specifications into compliance with the requirements of the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –51, and its implementing regulations; and (3) enjoining the award of any contract until the deficiencies in the specifications were corrected.

The next day, the trial court issued an order to show cause and, with the County's consent, temporarily restrained the County

from "awarding a contract in connection with the bidding process for the Central Avenue Project based on the Revised Specifications ... issued ... December 18, 2007" and providing that, "[i]n the event the Revised Specifications are determined to [be] legally invalid[,] then all bids accepted on January 10, 2008 will be declared invalid and the Project will be re-advertised in accordance with the Court's order." The order to show cause also provided for a return date, the expedited filing of an answer to the complaint and expedited discovery.

Once the County's answer was filed and expedited discovery was completed, and in order to moot any objections that plaintiff was only a vendor or supplier of equipment and not a "prospective bidder" under the bid, plaintiff moved to amend its complaint to add Daidone Electric, Inc.—an Essex County-based contractor that pledged to use the traffic signal equipment sold by plaintiff in a bid—as a party plaintiff. Although Daidone Electric presumably had standing to contest the bid specifications both as a prospective bidder and as a taxpayer in Essex County, the trial court denied that motion. It reasoned that, because Daidone Electric had not challenged the bid specifications "in writing with the contracting agent no less than three business days prior to the opening of the bids[,]" as required by *N.J.S.A.* 40A:11–13(d), an amendment to add Daidone Electric as a party plaintiff would be futile as its challenge would be untimely.[3]

At the plenary return date on the order to show cause, the trial court determined at the outset that, because plaintiff was never going to be a bidder on the project—its participation would have been limited to supplying the traffic control equipment to a

---

[3] Plaintiff's petition for certification also requested that we address "[w]hether taxpayers such as Daidone Electric, Inc., who are both a direct bidder and a taxpayer, are required to comply with the 3–day rule imposed by *N.J.S.A.* 40A:11–13(d)." Although the grant of certification in this matter did not limit the issues on appeal, our resolution of the primary issue on appeal-whether plaintiff has standing to challenge the bid specifications-obviates the need to address this second question. Therefore, we decline to do so.

contractor who then would bid on the project—plaintiff had no standing to challenge the bid specifications. *N.J.S.A.* 40A:11–13 requires that "[a]ny prospective bidder who wishes to challenge a bid specification" must do so in writing at least three business days before the bids are to be opened. (Emphasis supplied). In the trial court's view, "[t]his statute is not designed to cover, by its scope, what are essentially private dealings between a contractor and a vendor." It explained that "to be a prospective bidder, to have standing under a law dealing with public bids, you've got to be the person making the public bid or a prospective maker of a public bid." It reasoned that "[t]here is no way [plaintiff] is going to be making a bid to a public agency. [Plaintiff is], at best, going to be making a bid to a contractor who will then be making a bid to a public agency." And, because plaintiff could never be a bidder, the trial court concluded that "if you're not a prospective bidder of a public contract, you have no standing." It therefore dismissed plaintiff's complaint.

Both the trial court and the Appellate Division denied plaintiff's motion for a stay pending appeal. Plaintiff then sought and was granted an emergent stay pending appeal by this Court, first on April 23, 2008 by a single Justice granting the motion for a temporary stay "until further order of the Court[,]" and later on May 2, 2008 by the full Court. In the interim, the Appellate Division granted plaintiff's motion for acceleration of the appeal dismissing plaintiff's complaint.

The Appellate Division, in a published opinion, affirmed the dismissal of plaintiff's complaint for lack of standing. *Jen Elec., Inc. v. County of Essex,* 401 *N.J.Super.* 203, 949 *A.*2d 861 (App. Div.2008). Addressing the standing issue, the panel explained that "only taxpayers, bidders, and prospective bidders may challenge the award of a contract to the successful bidder." *Id.* at 212, 949 *A.*2d 861 (citations omitted). Conflating challenges to contract awards with earlier-in-time challenges to bid specifications, the Appellate Division noted that "our case law has established addi-tional prerequisites for challenges to bidding specifications issued

by contracting units pursuant to the public bidding laws." *Ibid.* For example, the panel noted that "New Jersey courts will not entertain a challenge by a bidder to bidding specifications after the bids have been opened." *Id.* at 212–13, 949 *A.*2d 861. The panel also recognized that the Local Public Contracts Law "establishes the time frame within which such a challenge must be made and the consequences of failing to do so." *Id.* at 213, 949 *A.*2d 861.

Examining plaintiff's role in this bidding process, the Appellate Division accurately defined plaintiff as a vendor that proposed to provide equipment to either a bidder or a "prospective bidder." It reasoned that "[b]ecause plaintiff is not a taxpayer in Essex County, did not submit a direct bid on the contract, and never intended to submit a direct bid in response to the specifications, plaintiff does not have standing under our case law to maintain this action." *Id.* at 214, 949 *A.*2d 861. It thus concluded that "an entity that proposes to furnish equipment to a direct bidder on a public contract should not be considered a 'bidder' or 'prospective bidder' under our case law or *N.J.S.A.* 40A:11–13. A contrary conclusion would be at variance with the ordinary meaning of the term 'bidder.'" *Id.* at 215, 949 *A.*2d 861.

We again granted plaintiff's emergent motion for a stay pending appeal to this Court, first on July 3, 2008 by a single Justice pending action by the full Court, and later on July 11, 2008 by the entire Court. We also granted plaintiff's petition for certification and accelerated this appeal "for argument on the earliest available date in September 2008." *Jen Elec., Inc. v. County of Essex,* 196 *N.J.* 344, 953 *A.*2d 762 (2008). For the reasons that follow, we reverse the judgment of the Appellate Division, reinstate plaintiff's complaint, and remand the case to the Law Division for further proceedings.

## II.

Plaintiff argues that, as a potential supplier of equipment or material to a bidder, it has standing to challenge illegal or

improper bid specifications, provided, of course, it does so in a timely manner. It asserts that it is entirely consonant with the normative policies and purposes underlying the public contracting statutes—the promotion of "free, open and competitive bidding[,]" *N.J.S.A.* 40A:11–13, and the prevention of favoritism and corruption—to allow equipment and materials vendors to be heard in opposition to bid specifications that contravene those policies and purposes. Narrowing in on the motivating factors that must support any bid specification challenge, plaintiff reasons that restricting bid specification challenges to bidders, prospective bidders and taxpayers, as the Appellate Division would have it, "essentially gives public agencies *carte blanche* to write illegal specifications because, so long as the illegal portions of the specifications do not directly impact the general contractors, no one will have the incentive—or legal standing—to challenge them."

In response, the County urges that the Appellate Division decision be affirmed in all respects. It asserts, in general, that standing to challenge a bid specification is limited only to bidders, prospective bidders and taxpayers, and that plaintiff qualifies as neither.

We address first whether the 2000 amendments to *N.J.S.A.* 40A:11–13 operate to limit who has standing to challenge a bid specification. In light of our conclusion on that question, we then turn to whether plaintiff had standing to challenge the bid specifications at issue here.

### III.

#### A.

In the first instance, our task is to determine the Legislature's intent when, in 2000, it amended Section 13 of the Local Public Contracts Law to add the following new paragraph at the end of subsection (e):

> Any prospective bidder who wishes to challenge a bid specification shall file such challenges in writing with the contracting agent no less than three business days

prior to the opening of the bids. Challenges filed after that time shall be considered void and having no impact on the contracting unit or the award of a contract.

[*N.J.S.A.* 40A:11–13.]

In that task, we are guided by well-settled standards of statutory construction. As we recently noted, "[g]enerally, under those standards, the intent of the drafters is to be found in the plain language of the enactment[,]" and "[i]f the language is clear, then the interpretative process will end without resort to extrinsic sources." *Bedford v. Riello,* 195 *N.J.* 210, 221–22, 948 *A.*2d 1272 (2008) (citing *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005)). Our resort to outside sources in determining legislative intent is not without limits: "We look to extrinsic evidence if a plain reading of the enactment leads to more than one plausible interpretation." *Id.* at 222, 948 *A.*2d 1272 (citing *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039). Stated differently,

[w]hen interpreting a statute, our overarching duty is to construe and apply the statute as enacted. We do so by applying the following principles. First, a court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation. That said, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. We have explained that we may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language. We are guided by first principles: our analysis begins with the plain language of the statute.

[*In re Liquidation of Integrity Ins. Co.,* 193 *N.J.* 86, 94, 935 *A.*2d 1184 (2007) (quoting *Daidone v. Buterick Bulkheading,* 191 *N.J.* 557, 565–66, 924 *A.*2d 1193 (2007)) (citations, internal quotation marks and editing marks omitted).]

That said, we also have made clear that "[t]hroughout, our analysis is informed by the injunction that words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." *Ibid.* (quoting *Soto v. Scaringelli,* 189 *N.J.* 558, 570–71, 917 *A.*2d 734 (2007) (citations and internal quotation marks omitted)).

On its face, the 2000 amendment to subsection 13(e) of the Local Public Contracts Law, *N.J.S.A.* 40A:11–13, appears clear: no "prospective bidder" may challenge a bid specification unless he does so in writing at least three days prior to the bid opening. The trial court interpreted that provision to limit standing to challenge a bid specification only to "prospective bidders." The Appellate Division construed the provision differently; it noted that

> *N.J.S.A.* 40A:11–13 does not confer standing upon a "prospective bidder" to maintain an action in our courts to challenge bidding specifications. Rather, the statute simply imposes limitations upon challenges to bid specifications by prospective bidders. As we have pointed out, the statute requires that, if a "prospective bidder" wishes to challenge bid specifications, it must make its objections in writing to the contracting unit no less than three business days prior to the date established for the opening of the bids. The statute also makes clear that a challenge raised after that time is void and will have "no impact on the contracting unit or the award of a contract."
>
> [*Jen Elec., Inc.*, *supra*, 401 *N.J.Super.* at 214, 949 *A.*2d 861.]

Acknowledging that *N.J.S.A.* 40A:11–13 is a statute of limitations, the panel however concluded that "an entity that proposes to furnish equipment to a direct bidder on a public contract should not be considered a "bidder" or "prospective bidder" under our case law or *N.J.S.A.* 40A:11–13. A contrary conclusion would be at variance with the ordinary meaning of the term "bidder."" *Id.* at 215, 949 *A.*2d 861.

To the extent the Appellate Division concluded that *N.J.S.A.* 40A:11–13 defines what actions must occur before a bid specification challenge will be time-barred and not a restriction upon who has standing to challenge a bid specification, we concur. That conclusion is driven by the application of well-entrenched standards of statutory construction. First, our review of the last paragraph of *N.J.S.A.* 40A:11–13 reveals no ambiguity; the plain language of that legislative enactment makes clear that it sets forth limitations on how and when a bid specification challenge must be prosecuted. Moreover, that provision limits the actions of "prospective bidders," a term that, although not defined in the Local Public Contract Law, is nevertheless used in various portions of the Local Public Contract Law, *see N.J.S.A.* 40A:11–25

to –32, as well as throughout our own jurisprudence. *See, e.g.,*
*Tormee Constr., Inc. v. Mercer County Improvement Auth.,* 143
*N.J.* 143, 146, 669 *A.*2d 1369 (1995) (defining recipients of adden-
dum issued by county improvement authority as "prospective
bidders"); *Meadowbrook Carting Co. v. Borough of Island*
*Heights,* 138 *N.J.* 307, 650 *A.*2d 748 (1994) (noting that Local
Public Contracts Law, *N.J.S.A.* 40A:11–20 to –22, provides munici-
palities with means of requiring prospective bidders to furnish in
advance a statement of their financial capacity); *George Harms*
*Constr. Co. v. N.J. Tpk. Auth.,* 137 *N.J.* 8, 36, 644 *A.*2d 76 (1994)
(explaining that, "[t]o conform with statutory requirements, bid
specifications for public contracts shall be sufficiently full and
explicit to notify prospective bidders of the kind and nature of the
subject of the contract and set up a common standard of competi-
tion, in short, supply such information as will afford all bidders a
fair and reasonable opportunity for competition and enable them
to bid intelligently" (quoting *Camden Plaza Parking, Inc. v. City*
*of Camden,* 16 *N.J.* 150, 159, 107 *A.*2d 1 (1954))); *Richardson*
*Eng'g Co. v. Rutgers, State Univ.,* 51 *N.J.* 207, 210, 238 *A.*2d 673
(1968) (noting state procurement statute, *N.J.S.A.* 52:35–2 and –3,
requires analysis, examination and classification of prospective
bidders).

■ More to the point, the plain meaning of a "prospective
bidder" in this context is self-evident. In this forward-looking
context—when contractors have not yet bid on a contract and are
in the process of reviewing and evaluating the bid specifications—
there simply are no "bidders" yet; at that juncture there are only
"prospective bidders." *See also* Sponsor's Statement to *L.* 1999, *c.*
440, § 19 (eff. Apr.17, 2000) ("The bill requires any prospective
bidder who wishes to challenge a bid specification under the [Local
Public Contracts Law] or the [Public School Contracts Law] to file
the challenge in writing with the contracting agent or purchasing
agent not less than three business days prior to the opening of the
bids."). For those reasons, then, we conclude that *N.J.S.A.*
40A:11–13 provides only a time-bar by which to gauge whether bid

specification challenges are timely, and it is not a legislative declaration of who may challenge a bid specification.

The question of who may bring a bid specification challenge requires resort to traditional notions of standing to complain. It is to the application of those standards in this context that we now turn.

### B.

Addressing the question of standing, the Appellate Division concluded that "it is well established that only taxpayers, bidders, and prospective bidders may challenge the award of a contract to the successful bidder." *Jen Elec., Inc., supra,* 401 *N.J.Super.* at 212, 949 *A.*2d 861. One cannot quarrel with that proposition. However, the dynamics applicable to a contract award challenge are fundamentally different from those that inform a bid specification challenge. In the former, all interested parties have accepted the specifications as drawn, have bid on those specifications, and, at least as far as the successful bidder is concerned, have a vested interest in the contract award itself. In contrast, when a challenge to a bid specification is interposed, none of the concerns that trigger a limitation on who can challenge a contract award are present: no party has shifted their position detrimentally and no rights in the contract have vested. Those fundamental differences require that the determination of who may challenge a bid specification must be gauged differently than the determination of who may challenge a contract award.[4]

---

[4] The Appellate Division did not draw this distinction. Instead, after stating an unchallenged proposition-that only bidders, prospective bidders and taxpayers have standing to challenge a contract award-the panel blurred the distinction between bid specification challenges and contract award challenges, and applied to the former the standing rules uniquely developed for the latter. According to the panel, there are "additional prerequisites for challenges to bidding specifications issued by contracting units pursuant to public bidding laws." *Jen Elec., Inc., supra,* 401 *N.J.Super.* at 212, 949 *A.*2d 861. However, the only "additional prerequisites" identified by the panel are time-bars: bid specification challenges are not cognizable *after* a contract award and, under the provision of the Local

 We return to first principles. New Jersey has long held the view that litigation is "appropriately confined ... to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness." *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 *N.J.* 98, 107, 275 *A.*2d 433 (1971). Under New Jersey's standing rules, "[e]ntitlement to sue requires a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed for the purposes of standing." *In re Adoption of Baby T*, 160 *N.J.* 332, 340, 734 *A.*2d 304 (1999) (citations omitted). This is so because "[a] lack of standing by a plaintiff precludes a court from entertaining any of the substantive issues presented for determination." *Ibid.* (citations omitted).

 New Jersey courts always have employed "liberal rules of standing." *N.J. Builders Ass'n v. Bernards Twp.*, 219 *N.J.Super.* 539, 530 *A.*2d 1254 (App.Div.1986), *aff'd*, 108 *N.J.* 223, 528 *A.*2d 555 (1987). Our "liberal rules of standing" are animated by a venerated principle: "In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of 'just and expeditious determinations on the ultimate merits.'" *Crescent Park Tenants Ass'n, supra*, 58 *N.J.* at 107–08, 275 *A.*2d 433. And that principle is premised on a core concept of New Jersey jurisprudence, that is, that our "rules of procedure were not designed to create an injustice and added complications but, on the contrary, were devised and promulgated for the purpose of promoting reasonable uniformity in the expeditious and even administration of justice." *Handelman v. Handelman*, 17 *N.J.* 1, 10, 109 *A.*2d 797 (1954).

---

Public Contracts Law at issue here, bid specification challenges must be made *no later than* three business days before bid opening and the consequent contract award. *Id.* at 212–13, 949 *A.*2d 861. In short, whether a claim is time-barred is not relevant to whether the party raising the claim has standing to do so.

An application of those principles yields the conclusion that, in the specific circumstances presented, plaintiff does have standing to challenge the bid specifications. No doubt, as the provider of equal, alternate equipment that would be responsive to a generic, but not a sole-source, bid, plaintiff possessed a sufficient stake in the outcome of this litigation. We have explained the governing rule thusly:

> Only a substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed for the purposes of standing. Generally, a person who has suffered any economic detriment as a result of [governmental] action can gain standing for judicial review of that action without proving any unique financial damages. .... The right of judicial review to protect against improper official action is constitutionally secure and available as of right.
>
> [*In re Camden County,* 170 *N.J.* 439, 446–47, 790 *A.*2d 158 (2002) (citations, internal quotation marks and editing marks omitted).]

Through plaintiff's varied yet unsuccessful attempts to persuade the County to correct the shortcomings in the bid specifications, plaintiff has demonstrated real adverseness between it and the County. Further, because plaintiff has asserted that its equipment is significantly less expensive—and, hence, it stands to reason that the public fisc would benefit from contractors that substitute plaintiff's equipment for the more expensive sole-source specified equipment in a contractor's quest to secure the lowest responsible, responsive bid—it cannot be questioned that plaintiff has demonstrated a substantial likelihood of harm if its challenge is rejected. Finally, because denying plaintiff standing in this context would "preclude [the] court from entertaining any of the substantive issues presented for determination[,]" *In re Adoption of Baby T, supra,* 160 *N.J.* at 340, 734 *A.*2d 304, and the significant issues presented here address the very bedrock of public contract bidding requirements—that is, "free, open and competitive bidding[,]" *N.J.S.A.* 40A:11–13—plaintiff has established that it has standing to challenge the bid specifications at issue here.

That said, we underscore the very limited nature of our ruling. Plaintiff here was an active, indeed pro-active, participant in the bidding process, and the majority of its concerns addressed core principles of public contracting. Its interest in

this controversy is undeniable, and its participation in this contest speaks for itself. Those factors, together with the factors we have already identified, inform and in large measure limit our conclusion. Standing is a creature of the common law, as New Jersey courts "will not . . . entertain proceedings by plaintiffs who do not have sufficient legal standing to maintain their actions[,]" *Al Walker, Inc. v. Stanhope*, 23 *N.J.* 657, 660, 130 *A.*2d 372 (1957) (citations omitted), "nor will [our courts] entertain proceedings by plaintiffs who are 'mere intermeddlers,' or are merely interlopers or strangers to the dispute." *Crescent Park Tenants Ass'n, supra*, 58 *N.J.* at 107, 275 *A.*2d 433. Thus, the common law development of whether a plaintiff has standing is subject to the following test: "In passing upon a plaintiff's standing the court is properly required to balance conflicting considerations and weigh questions of remoteness and degree." *Walker, supra*, 23 *N.J.* at 661, 130 *A.*2d 372. Those principles, therefore, mandate that nothing in this opinion shall be construed as subjecting bid specifications to challenge other than from those with a clear, identifiable, substantial, and real interest in the outcome of that challenge.

IV.

The judgment of the Appellate Division is reversed, plaintiff's complaint is reinstated, and the cause is remanded to the Law Division.

Justice HOENS, dissenting.

The statutes that govern local public contracts, *see N.J.S.A.* 40A:11–1 to –51, and in particular those that create the arena in which bids are solicited and contracts are awarded, represent the Legislature's careful balance of rights and responsibilities based on its consideration of a variety of important public policies. *Terminal Constr. Corp. v. Atlantic County Sewerage Auth.*, 67 *N.J.* 403, 409–10, 341 *A.*2d 327 (1975) (identifying public policy objectives of public bidding statutes); *Camden Plaza Parking,*

*Inc. v. City of Camden*, 16 *N.J.* 150, 159, 107 *A.*2d 1 (1954) (describing function and purpose of bid specifications on public contracts); *see George Harms Constr. Co. v. N.J. Tpk. Auth.*, 137 *N.J.* 8, 36, 644 *A.*2d 76 (1994) (extending public policy rationale of Local Public Contracts Law to Turnpike Authority's specifications). Viewed as a whole, those statutes ensure that the process of bidding and the award of contracts for work to be paid for by the taxpayers will be conducted in an orderly fashion by imposing clear rules that govern every important aspect of the process.

An integral part of the way in which the Legislature has chosen to bring order and regularity to the process of public contracting is found in the statute that forms the basis for this dispute. *See N.J.S.A.* 40A:11–13. There, in language that is both plain and clear, the Legislature has designated the manner, timing, and methods by which objections or challenges to bid specifications are permitted to be made. By using the phrase "prospective bidders," the Legislature employed language that is both a well-understood term of art in the construction industry and that is used elsewhere in the statutory scheme in consonance with that accepted meaning. *See, e.g., N.J.S.A.* 52:35–2 (referring to prospective bidders on public contracts as those "proposing to submit bids"); *N.J.S.A.* 40A:11–16 (referring to award of contract to lowest responsible bidder). That the language is clear is a point on which the majority and I agree.

My disagreement with the majority arises from the conclusions reached by my colleagues that this statutory language is merely a timing limitation, and that it is one that affects only prospective bidders. As a result, I find myself unable to agree with the majority's further conclusion that our standing rules permit one who could not have been a bidder and is not a taxpayer to nevertheless prevent a contract from being awarded by challenging the bid specifications. I do so for three reasons.

First, the fact that the Legislature specifically limited a challenge about the bid specifications to a prospective bidder implies that it intended to require such a challenge to be made early

enough in the process that it will not interfere with the preparation, submission, and opening of qualifying bids. Cloaking plaintiff, or other suppliers, with the right to pursue such a challenge through a standing analysis will not further any of the purposes of that orderly bidding procedure. Nor will it serve to advance the larger public purposes that we have long recognized through our conclusion that taxpayers have standing to dispute a contract award.

Second, it seems to me that the Legislature, fully cognizant of the fact that the taxpayers, in particular, have standing to protect their interests through a challenge, used the limiting language that it chose because it concluded that there would be no lack of oversight by affected or interested individuals. In light of the fact that the Legislature selected language that is clear, I would give full force and effect to what appears to be its public policy choice about who may interpose a challenge to a bid specification and when it must do so.

Third, as a practical matter, there is nothing in the majority's analysis that limits the right of any potential supplier, however large or small, to commence a challenge to the bid specifications. Although the majority refers to "clear, identifiable, substantial and real interest in the outcome," *ante* at 647, 964 *A.2d* at 803, as the benchmark, that standard would, in theory, permit any would-be supplier to mount its challenge. Surely, any potential supplier seeking to alter the bid specifications would be able to point to a sufficient interest to meet that test, because to each such entity, the outcome of the challenge can easily be described in terms of an effect on the entity's business that is clear, identifiable, substantial, and real. Even if the effort is ultimately unsuccessful, empowering such a wide variety of putative challengers creates the very real possibility of significant delay in public contracting and threatens to interfere with the orderly system that the Legislature envisioned and that the statute seeks to impose. Nor, for that matter, is the scope of the relief created by the majority limited by time. Instead, the majority embraces the Appellate

Division's characterization of *N.J.S.A.* 40A:11–13 as a "statute of limitations," *ante* at 642, 964 *A.*2d at 799, applicable only to prospective bidders. Therefore, according to the majority's analysis, the section apparently does not limit others, including plaintiff, at all. That approach leaves open the possibility that a true prospective bidder, having missed the three-day deadline, could importune a supplier to file its challenge, thus sidestepping the limitations on its right to challenge those specifications that the majority recognizes the Legislature intended to establish.

The process of creating specifications, soliciting bids, and awarding public contracts best serves the public when it is conducted in accordance with the carefully constructed, orderly procedures that the statutory scheme envisions. Because I am concerned that the majority's decision to open the door to challenges by potential suppliers both interferes with that well-established system and has the potential for throwing the bidding process into a kind of chaos that our Legislature surely sought to avoid, I respectfully dissent.

*For reversal/reinstatement/remandment*—Justices LaVECCHIA, ALBIN, WALLACE and RIVERA–SOTO—4.

*For dissent*—Justice HOENS—1.